JESSE ARMSTRONG v. C. T. SPRUILL AND W. D. PEEL, EXR. OF
MRS. C. T. SPRUILL, DECEASED.

(Filed 12 September, 1923.)

**1. Supreme Court—Decisions—New Trials—Second Appeal.**

The former decision of the Supreme Court, holding that the issue as to plaintiff's damage for overflow of water upon his land should have been submitted to the jury upon evidence tending to show that defendant had enlarged an established common drainage ditch to increase the flow of water upon plaintiff's lands, does not apply to the present appeal, wherein it appears that the defendant had not so enlarged the ditch or increased the flow of the waters, to plaintiff's damage.

**2. Waters—Drainage—Damages—Lower Proprietor.**

Where it is shown that a drainage ditch is common to several owners of land through which it runs, and that the owners and predecessors in title have cleared or maintained the ditch on their own lands for this purpose for a long term of years: *Held,* in an action for damages by overflow water by a lower proprietor against an upper one, that it is the duty of the former to cut and keep the ditch properly open on his own land without obligation of the upper proprietor to do so for him; and where the upper proprietor has not increased or changed the flow of the water upon the lands of the lower one, the latter may not recover damages in his action therefor.

**3. Same—Contracts.**

And where the owners of land have afterwards entered into a written contract, whereby each one draining into the common canal has obligated himself to cut, clear out, and maintain it, each paying his proportionate part, an upper proprietor properly doing more than his share creates no cause of action against him thereby, or relieves the lower proprietor from

sustaining the damages caused by the flow of water on his own land, occasioned by his breach of duty to perform his own agreement upon his own land.

**4. Waters—Drainage—Discontinuance—Statutes.**

Where an owner of lands in connection with other adjacent owners is bound to the clearing-out and cutting of a drainage canal on his land that has been used by them all and their predecessors in title in common for a long term of years, he must give notice of his wish to discontinue it, under the provisions of the statute, to relieve him of responsibility for not doing so.

APPEAL from *Connor, J.,* at January Term, 1923, of TYRRELL.

This was an action for alleged damages to crops and land by reason of cleaning out the canal, some two and one-half miles long, running from the farm of the defendant through the lands of a number of parties, including the plaintiff, down to Alligator Creek.

This canal was cut before the Civil War over 60 years ago. It was originally cut 12 feet or more in width, and those owning lands on each side of it drained into this canal and helped to keep it open until about 1915, at which time the plaintiff purchased a small tract of land, lying on the canal, of about 80 acres owned by Jesse Cooper, who lived on the farm. After Cooper's death it was cut up and sold in small tracts. Don C. Sawyer purchased part of the Cooper tract and drained into and used said canal and helped keep it cleaned out. The canal runs through the Cooper tract and the plaintiff's 30 acres and that of others, and they all helped to clean it out—all the land between Mrs. Spruill's California Farm aforesaid and the Alligator River adjacent to this canal.

The canal was cleaned out in 1915 after the plaintiff purchased his 30 acres of the Cooper tract. He sold off $700 of it and now holds the balance. Cooper, and those who owned the lands after him, down to the plaintiff, drained into the canal and helped to maintain it. The plaintiff joined with his neighbors in a contract, signed 1 September, 1917, whereby he and others describing themselves as "The owners of the land adjoining or lying near to the Cherry River Landing Canal, which said canal extends from Cherry's Landing on Alligator River up to the farm now owned by Claude Spruill," and reciting that "Whereas we have heretofore been accustomed to use Cherry River Landing Canal for the purpose of draining our lands, but in recent years the said canal has become so filled with dirt, debris and other matter that it is no longer sufficient to adequately drain the said land, and it is necessary that the same be put in proper condition for that purpose; and whereas it is our decision and purpose to clean out said canal from Cherry's Landing aforesaid up to the fork of the Gum Neck Road so that the same may be used hereafter as a common drainway for the lands now owned by us respectively, and to hereafter keep up and main-

tain the same so that the said canal will thereafter at all times be suffi-
cient for the purpose aforesaid: Now, therefore, we, the undersigned,
on behalf of ourselves and our heirs and assigns, do hereby contract and
agree to and with each other to have said Cherry River Landing Canal
cleaned out and put in proper condition from Cherry's Landing afore-
said up to the fork of the Gum Neck Road so that the same will there-
after be sufficient to drain the land now owned by us, our heirs or
assigns, and that each of us will pay our proportionate part of the
expense of the same according to the number of acres of land which we
have to drain into the same, i. e., that as soon as the total cost of im-
provement is ascertained we will pay our proportionate part of the
same according to the number of acres which we may have to drain
into the same, and we do hereby contract and agree to and with each
other that should any of us fail to pay his proportionate part of such
expense as aforesaid that the part of the ones so remaining unpaid shall
be a lien upon the tract of land owned by him; and in case he, his heirs
or assigns, shall fail to pay the same for any reason, then the others
shall be entitled to have the land of such defaulting landowner sold to
pay his proportionate part of such expenses."

There is a further provision in the contract for the future mainte-
nance of the said canal that there shall be a lien upon the land of
each for the proportionate part of the expense of maintenance. The
contract was duly executed under seal.

At the close of the plaintiff's testimony the defendant moved for a
nonsuit and excepted to its refusal, and at the conclusion of all the testi-
mony the motion was renewed and refused, which was excepted to.

From the verdict and judgment for plaintiff, the defendants appealed.

*W. L. Whitley and Meekins & McMullan for plaintiff.*
*T. H. Woodley and Aydlett & Simpson for defendants.*

CLARK, C. J. This case was before Fall Term, 1921—*Armstrong v.
Spruill,* 182 N. C., 1. It there appeared from the uncontradicted testi-
mony that the canal drained the lands of all the parties along its
line under a prescriptive right, but that the defendant, an upper pro-
prietor, finding it had become insufficient, without a proceeding under
the statute, had enlarged and deepened it and increased the flow of
water upon the plaintiff's land, and there was a conflict of testimony
whether such enlargement had caused damage to the plaintiff. The
Court held that it was error not to have submitted this to the jury.
In the present case, witnesses of both plaintiff and defendant testified
that the canal was not cut deeper or wider than before, and the plaintiff
testified that it was not cut as wide or as deep in 1915 as it was orig-
inally. Therefore the former decision has no bearing.

One question much debated was whether Mrs. L. C. Spruill had authorized the cleaning out and cutting of the canal, which work was supervised by her husband. Defendant moved for nonsuit upon the ground that the evidence did not sustain the contention that the work was done by her authority; and secondly, that upon the merits there should have been a nonsuit.

We do not think it necessary to discuss the first proposition for, upon the evidence, we think the nonsuit should have been granted because no cause of action was shown.

The decisions of this and other courts are to the effect that "Where a drainage canal has been established and used as a right by abutting proprietors, in the absence of statutory contract or prescriptive regulations to the contrary, the obligation is upon each of the proprietors to clean out and properly maintain the portion of the canal running through his own land, and ordinarily he has no right to compel another proprietor to do this for him, nor to hold such proprietor for damages for not doing it." *Craft v. Lumber Co.,* 181 N. C., 31; *Lamb v. Lamb,* 177 N. C., 150, and cases cited.

The uncontroverted evidence here is that this canal was dug more than fifty years ago and was used for that length of time or longer, up to 1915, by the owners of the lands adjoining the canal as a drainway. The plaintiff owned a part of the Cooper tract, and the evidence is that Cooper drained into this canal and helped to maintain it. Afterwards Sawyer purchased a part of the Cooper tract, which is the land that the plaintiff now owns, and drained into this canal and helped to maintain it; that this canal is the only drainway of the California and other farms adjacent to the canal down to the Alligator River; that the owners of these adjacent lands have helped to maintain this canal all these years; that the canal has not been enlarged either in width or depth. The testimony of both the plaintiff and defendant established these facts. It follows that while it was not the duty of the owner of the California Farm to cut the ditch through the land of the plaintiff, neither was it her duty to cut it on to the Alligator River. The owners of the Cooper land were bound to cut the ditch through their lands according to all the decisions of the Court.

Besides, there is the express agreement, 1 September, 1917, of the plaintiff and all the other owners of land adjacent to the canal and draining into it to cut and clean out the canal and to maintain it, each one paying his proportionate part.

The court therefore erred in not sustaining the motion of nonsuit, both at the close of the plaintiff's testimony and at the close of the whole testimony. She was not compelled under that agreement to cut as far as was done, but that she did more than her share constitutes no cause

of action against her estate. She, being now deceased, is represented in this action by her personal representative.

Had the defendants not cut through her land as she was required to do under the joint agreement, she would be liable to the other parties, but she is not responsible for having cut further than her obligation required nor that she did not cut down to the Alligator River.

The land of the plaintiff was a part of the Cooper tract. The canal was cut through it. It was divided up into small tracts according to the evidence of the plaintiff himself, and a part of the water from his land drained into this canal as appeared from his cross-examination, and the canal runs through his lands; therefore, even if he had cut other ditches and drained part or the most of his land elsewhere, still the defendant would not be legally bound to cut the ditch through the plaintiff's land. *Craft v. Lumber Co.* and *Lamb v. Lamb, supra.*

The plaintiff has given no notice that he would discontinue draining into this canal and, in fact, has not discontinued. If he had desired to relieve himself of this responsibility his remedy was under the statute.

From a careful perusal of all the evidence in the record, it clearly appears that the lands of the plaintiff are low lands; that this canal was cut over two miles many years ago by the owners of these lands; that the canal has been maintained regularly as a drain-way and that it is the only drain-way, according to the testimony and the maps, for these lands. The plaintiff was bound under the joint contract of September, 1917, to cut the ditch through his own lands, and if, by failing to do so, the water from the other proprietors, among them the defendant, comes upon his land, he is not entitled to damages. His remedy is fully set out by his Honor, *Hoke, J.,* in a very clear and instructive opinion in *Lamb v. Lamb, supra.*

There was error.

Reversed.