THOMAS J. HAWTHORNE, AND WIFE CHARLOTTE M. HAWTHORNE, JEROME MILTON, AND WIFE MARY SUE MOCK MILTON, C. CARL WARREN, JR., AND WIFE JOSEPHINE L. WARREN v. REALTY SYNDICATE, INC.; MARSH REALTY COMPANY; AND MARSH FOUNDATION, INC.

No. 103

(Filed 15 July 1980)

**1. Deeds § 20.6— restrictive covenants in subdivision—who may enforce**

When an owner of a tract of land subdivides it and conveys distinct parcels to separate grantees, imposing common restrictions upon the use of each parcel pursuant to a general plan of development, the restrictions may be enforced by any grantee against any other grantee; moreover, the right to enforce may be exercised by subsequent grantees against any purchaser who takes land in the tract with notice of restrictions, and a purchaser has such notice whenever the restrictions appear in a deed or in any other instrument in his record chain of title.

**2. Deeds § 20— subdivision developed pursuant to general plan of common restrictions—test**

That a subdivision has been developed pursuant to a general plan of common restrictions is a statement of legal conclusion that the grantor intended to impose a common servitude upon all the parcels conveyed for the mutual benefit of all the grantees and their successors, and the primary test of the existence of such intent is whether substantially similar restrictions were made to apply to all lots of like character or similarly situated.

**3. Deeds § 20— residential subdivision—restriction included in all deeds**

Evidence was sufficient to support the trial court's conclusion that the original grantors intended to develop their land as residential subdivisions where the evidence tended to show that the original deed to each and every parcel subdivided from the tracts comprising the two blocks in question contained the residential restriction at issue.

**4. Deeds § 20.6— restrictive covenants—enforcement not limited to adjoining landowners**

Language in the original deed to a lot to the effect that the restrictions imposed were for the "mutual protection" of "adjoining lot owners" did not limit enforcement of the restrictions to owners whose lot lines actually physically touched the bounds of the lot in question.

**5. Deeds § 20— restrictive covenants—two blocks developed as single unit**

Lot owners in Block 9 of a subdivision were proper parties to enforce a restrictive covenant affecting defendants' lot in Block 7 of the subdivision, since the two blocks were platted together; sales of the lots in each tract began at substantially the same time; the restrictions imposed by the deeds to the lots in both tracts were substantially similar; and it was thus shown that the two blocks were developed as a single unit.

Hawthorne v. Realty Syndicate, Inc.

**6. Deeds § 20.1— residential restrictive covenants—commercial use of land around subdivision irrelevant**

In an action to enjoin defendants from using a subdivision lot for any purpose other than residential purposes were defendants contended that such fundamental changes had occurred in the residential character of the neighborhood so as to render the continued enforcement of the residential restriction inequitable, the fact that adjoining or surrounding property had come to be used for commercial purposes had no bearing on the character of the subdivision itself, and the trial court therefore properly excluded defendants' proffer of evidence of changes occurring in the use of properties along a road which was adjacent to but outside the boundaries of the subdivision.

**7. Deeds § 20.1— residential restrictive covenants—construction of apartments— covenant not violated**

A restrictive covenant limiting the use of property to residential purposes did not, in the absence of further qualifying language, prohibit the erection of apartments.

**8. Deeds § 20.6— residential restrictive covenant—waiver as to two lots—validity of restriction as to other lots**

Neither acquiescence by subdivision property owners to the construction of a public library nor the express contractual waiver of enforcement rights by two of the plaintiffs to the use of a former residence as a branch bank office precluded the continued validity of a residential restriction as to all the remaining lots in a subdivision, since the lot owners contractually released their enforcement rights with an express reservation of the right to enforce the residential restriction as to all remaining lots in the subdivision; the library was an unobtrusive brick structure surrounded by trees and situated on a spacious lot at the southernmost corner of a block; the proposed home for the bank was a residence which had not been used for other than residential purposes; and the agreement waiving the residential restriction with respect to the use of the building provided that its exterior structural appearance would continue to be maintained.

**9. Deeds § 20.1— restrictive covenants—racial restriction—separability of residential restriction**

Defendants' contention that a residential restriction contained in deeds in a subdivision must fall because of its conjunction with an unenforceable racial restriction is meritless, since the two clauses, though expressed as part of the same covenant, were so clearly independent that one need not infect the other.

Justice HUSKINS and BRITT dissent.

DEFENDANTS appeal from a decision of the Court of Appeals (opinion by *Judge Erwin* with *Judges Clark* and *Wells* concurring) which reversed the judgment entered 27 April 1978 by *Judge David I. Smith* in MECKLENBURG Superior Court and remanded the case for issuance of injunctive relief sought by plaintiffs. The

decision of the Court of Appeals is reported at 43 N.C. App. 436, 259 S.E. 2d 591 (1979). This Court granted defendants' petition for discretionary review pursuant to G.S. 7A-31 on 6 February 1980.

*Ruff, Bond, Cobb, Wade & McNair by Hamlin L. Wade for plaintiff appellees.*

*Helms, Mulliss & Johnston by Fred B. Helms, Robert B. Cordle and William H. Higgins for defendant appellants.*

EXUM, Justice.

The basic questions raised by this appeal are: (1) whether the individual lots in Block 7 of the Myers Park Development in Charlotte remain subject to a covenant restricting their use to residential purposes, and (2) if so, whether the plaintiffs in this action may enforce the restriction. We answer both questions in the affirmative.

Plaintiffs instituted this action on 21 August 1972 to enjoin defendants from using Lot 6 in Block 7 of Myers Park for other than residential purposes. Defendant Realty Syndicate had purchased Lot 6 in December 1968 and had leased the house on the lot for office use beginning 1 September 1969. On 11 November 1975, the lot in question was conveyed to defendant Marsh Realty Company. Plaintiffs Thomas Hawthorne and wife are the owners of Lot 5A in Block 7. Plaintiffs Carl Warren and wife own Lot 3 in the same Block. Plaintiffs Jerome Milton and wife own Lot 10 in Block 9. Block 9 is separated from Block 7 by a four-lane road. None of the lots owned by plaintiffs touch the boundaries of defendants' Lot 6.

Plaintiffs contend that defendants' nonresidential use of Lot 6 violates the terms of a restrictive covenant contained in the original deed to the lot, which provides that:

"The property shall be used for residence purposes only and shall be occupied and owned by only people of the white race. . . .

\*    \*    \*

"The foregoing restrictions and covenants are substantially similar to those contained in deeds to adjoining lot owners and are for the mutual protection of such lot owners."

Substantially similar language is contained in all other deeds resulting from subdivision of Blocks 7 and 9 by the original owners, George Stephens and the Stephens Company. Plaintiffs argue that Blocks 7 and 9 were subdivided as part of one common plan restricting the use of the subdivided lots to residential purposes; that defendants had record notice of such a common plan; and that defendants' present use of Lot 6 in Block 7 for commercial purposes should therefore be enjoined.

Defendants respond that there is no common plan of development applicable to Blocks 7 and 9, and that even if there were, the restrictive covenant is enforceable only at the instance of those property owners whose lots physically adjoin the property subject to this dispute. Defendants contend furthermore that the erection of apartment houses and a branch public library in Block 7 has so fundamentally changed the residential character of the area as to render enforcement of the covenant inequitable. Finally, defendants argue that plaintiffs Thomas Hawthorne and wife have waived whatever rights they had to proceed on the covenant by signing a release and covenant not to sue with regard to the proposed development of a branch bank office on another lot in Block 7.

In his order of 27 April 1978, Judge Smith made the following pertinent findings of fact:

"12. That the deeds conveying all lots in Blocks 7 and 9 contain restrictions that they should be used only for residential purposes and the defendants in this action and other owners and occupants, either directly or through mesne conveyances, hold their lots upon this condition;

"13. That the restrictions in the various deeds differ only slightly with some deeds having ten paragraphs, some eleven, some twelve;

"14. That some of the deeds provide that the restrictions 'are for the protection and general welfare of the community and shall be covenants running with the land'; some of the deeds provide that the restriction shall be a covenant running with the land only; other deeds provide 'that the foregoing restrictions are substantially similar to those contained in deeds to adjoining lot owners and are for the mutual protection of such lot owners';

"15. That the deeds contain the following paragraph: 'The property shall be used for residential purposes only and shall be occupied and owned by only people of the white race';

\* \* \*

"17. That sometime during the period of 1954 the owners of lots in Block 7 acquiesced in the construction of a public library on Lot 10-A of Block 7. . . . Sometime during the period of 1969 and 1970 multi-family apartments . . . were constructed on Lots 8 and 9 of Block 7. . . .

"18. . . . [T]hat plaintiff Thomas Hawthorne and wife . . . executed documents entitled 'Release and Covenant Not to Sue' on the 29th day of October, 1975, allowing the use of Lot 4 Block 7 for a branch office of Mutual Savings and Loan Association. . . ."

Based upon these and other findings, none of which were excepted to by the parties, Judge Smith concluded as a matter of law: (1) The language of the deeds originally conveying the subdivided lots of Blocks 7 and 9 evidenced an intent of the grantors, George Stephens and the Stephens Company, to develop the lots in accordance with a uniform plan to establish "single family residences"; (2) the placement of the apartments and the library in Block 7 constituted fundamental departures from the general plan and thereby destroyed "the purposes of the restrictions"; (3) the 1975 release by the Hawthornes of their right to sue regarding the planned bank office constituted "a waiver of their respective rights"; and (4) Block 9 was separable from Block 7 and was not to be included in the judgment. Judge Smith then denied plaintiffs' prayer for injunctive relief.

The Court of Appeals reversed, 43 N.C. App. 436, 259 S.E. 2d 591 (1979). Although it agreed with the trial court's conclusion that Blocks 7 and 9 were subdivided subject to a common plan of residential restriction, the Court of Appeals held that no fundamental or radical changes had occurred in the area such as to preclude enforcement of the restrictive covenant. It also concluded that all plaintiffs had standing to maintain suit on the covenant and were entitled to injunctive relief. We agree with the Court of Appeals' opinion in all respects.

[1]   The restriction imposed upon defendants' lot by virtue of the covenant placed in the original deed provides that the land "shall be used for residence purposes only." There is no express language in the deed that the covenant should run with the land. Thus, in the *absence* of indications that the land was subdivided and first conveyed as part of a general plan by the original grantor to impose uniform restrictions upon all the parcels conveyed, this covenant would stand merely as an obligation personal to and enforceable. only by the original grantor. *Stegall v. Housing Authority*, 278 N.C. 95, 178 S.E. 2d 824 (1971); *Sheets v. Dillon*, 221 N.C. 426, 20 S.E. 2d 344 (1942). However, when an owner of a tract of land subdivides it and conveys distinct parcels to separate grantees, imposing common restrictions upon the use of each parcel pursuant to a general plan of development, the restrictions may be enforced by any grantee against any other grantee. Moreover, the right to enforce may be exercised by subsequent grantees against any purchaser who takes land in the tract with notice of the restrictions. A purchaser has such notice whenever the restrictions appear in a deed or in any other instrument in his record chain of title. These principles are well established in the common law of this and many other states. *See Sedberry v. Parsons*, 232 N.C. 707, 62 S.E. 2d 88 (1950); *Homes Co. v. Falls*, 184 N.C. 426, 115 S.E. 184 (1922); Annotation, 51 A.L.R. 3d 556, § 9(c) (1973).

[2, 3]   That a subdivision has been developed pursuant to a "general plan" of common restrictions is, of course, a statement of legal conclusion that the grantor *intended* to impose a common servitude upon all the parcels conveyed for the mutual benefit of all the grantees and their successors. The primary test of the existence of such intent is whether substantially similar restrictions were made to apply to all lots of like character or similarly situated. *Sedberry v. Parsons, supra.* The record here reveals that the original deed to each and every parcel subdivided from the tracts comprising Blocks 7 and 9 contained the residential restriction at issue. This fact alone provides ample support for the trial court's conclusion that the original grantors, George Stephens and Stephens Company, intended to develop these tracts in Myers Park as residential subdivisions. *Cf. Brenizer v. Stephens*, 220 N.C. 395, 398, 17 S.E. 2d 471, 473 (1941), wherein this Court noted that the territory in Block 7 "is uniformly

covered by deeds containing, amongst other covenants, restrictions that the property shall be used only for residential purposes."

[4] Defendants however contend that the residential restrictions can be enforced against them only by those property owners whose lot lines physically "adjoin"—in the sense of touch—the bounds of defendants' Lot 6. Although it is true that the original deed to Lot 6, and those to several other lots in Block 7, contain language to the effect that the restrictions imposed are for the "mutual protection" of "adjoining lot owners," we do not read this language as limiting enforcement of the restriction to such owners. Deeds to some of the other lots in the block contain no such language; still others provide that the restrictions "shall be covenants running with the land." Such differences in the general phraseology embracing the restriction do not themselves defeat the inference of a common plan, *see Higdon v. Jaffa*, 231 N.C. 242, 250, 56 S.E. 2d 661, 667 (1949), nor do we believe that they should be interpreted to effect a difference in the enforcement rights of the respective owners in Block 7. Such a literal construction would fly in the face of the evident intent of the grantors to ensure the continuing residential character of the area. Under the precise factual circumstances of this case, then, we agree with the Court of Appeals that the grantors intended the residential covenant to be enforceable by *all* the owners in Block 7.

[5] Moreover, we approve the Court of Appeals' decision that the lot owners in Block 9 are entitled to the benefits of the covenants affecting the lot in Block 7. Although this Court has held on several occasions that various subdivisions in Myers Park should be treated as separable units, *see Tull v. Doctors Building, Inc.*, 255 N.C. 23, 37, 120 S.E. 2d 817, 826 (1961) and cases cited therein, these holdings merely emphasized that Myers Park, comprising some 1100 acres, was not planned as a single development. Whether the adjacent Blocks 7 and 9 were developed as a single unit depends, as the Court of Appeals correctly pointed out, upon whether the grantors treated the two tracts as one and intended to impose uniform and simultaneous restrictions on the use of the lots in both. *Craven County v. Trust Co.*, 237 N.C. 502, 75 S.E. 2d 620 (1953). Blocks 7 and 9 were platted together. Sales of the lots in each tract began at substantially the same time. The restrictions imposed by the deeds to the lots in both tracts are substan-

tially similar. These and other factors disclosed in the trial court's findings of fact support the conclusion that the two blocks were developed as one parcel, subject to common restrictions intended for the mutual benefit of the property owners in both tracts. We agree, therefore, with the holding that lot owners in Block 9 are proper parties to enforce a restrictive covenant affecting defendants' lot in Block 7.

Defendants strenuously contend that even if there was once a common plan of residential development in Block 7, there have now occurred such fundamental changes in the residential character of the neighborhood as to render the continued enforcement of the residential restriction inequitable. In support of this proposition, defendants point to the extensive commercial use of properties on Providence Road, adjacent to *but outside of* the boundaries of the Block 7 subdivision. The trial court furthermore made findings of fact to the effect that a public library and apartment houses had been constructed on certain lots within Block 7. None of these factors, however, provide a basis for the legal conclusion that the residential purpose of the subdivision's development has been frustrated.

Whether the growth and general development of an area represents such a substantial departure from the purposes of its original plan as equitably to warrant removal of restrictions formerly imposed is a matter to be decided in light of the specific circumstances of each case. "No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement." *Rombauer v. Compton Heights Christian Church*, 328 Mo. 1, 17-18, 40 S.W. 2d 545, 553 (1931), *quoted in Tull v. Doctors Building, Inc., supra*, 255 N.C. at 39, 120 S.E. 2d at 828.

[6, 7] In light of this general principle, we note first that the trial court properly excluded defendants' proffer of evidence of changes occurring outside the subdivision area. The fact that adjoining or surrounding property is now used for commercial purposes has no bearing on the character of the subdivision itself; an island is not made a swamp simply because waves lick at its shores. *Higdon v. Jaffa, supra*, 231 N.C. 242, 56 S.E. 2d 661; *Brenizer v. Stephens, supra*, 220 N.C. 395, 17 S.E. 2d 471. Next,

we cannot agree with the trial court's conclusion that placement in Block 7 of the apartment buildings violated the restrictive covenant. Our case law has followed the general rule that a restrictive covenant limiting the use of property to residential purposes does not, in the absence of further qualifying language, prohibit the erection of apartments. *Huntington v. Dennis*, 195 N.C. 759, 143 S.E. 521 (1928); Annotation, 99 A.L.R. 3d 985, § 4 (1980); *Cf. DeLaney v. VanNess*, 193 N.C. 721, 138 S.E. 28 (1927) ("dwelling" restriction permits apartment buildings).

[8]   Finally, we agree with the Court of Appeals that neither acquiescence by the property owners in Block 7 to the construction of a public library nor the express contractual waiver of enforcement rights by plaintiffs Hawthorne to the use of a former residence as a branch bank office preclude the continued validity of the residential restriction. As to the public library, all the lot owners in Blocks 7 and 9 contractually released their enforcement rights with an express reservation of the right to enforce the residential restriction as to all the remaining lots in the subdivision. Similarly, the waiver agreement respecting the branch bank office expressly retained the right to enforce "any and all restrictions . . . which may be violated by the use of any other lots in Block 7 by the respective owners thereof." It is clear, then, that none of the lot owners who signed these agreements intended to waive generally and forever their legal right to maintain the restriction. Their acquiescence in these two changes within the covenanted area does not constitute a general waiver unless the changes themselves are so radical "as practically to destroy" the residential character of the neighborhood. *See Tull v. Doctors Building, Inc., supra.* Yet the facts disclosed by the record compel an opposite conclusion. Although obviously not a residence itself, the library building is an unobtrusive brick structure surrounded by trees and situated on a spacious lot at the southernmost corner of Block 7. The proposed home for the bank office is a gray stone residence which, at the time of the trial of the present action, had not been used other than for residential purposes. The agreement waiving the residential restriction with respect to the use of this building provides that its exterior structural appearance will continue to be maintained. Under these circumstances, the library and the proposed bank office represent no more than minor intrusions upon the quiet enjoyment of an area

otherwise residential in nature. That their presence might violate the letter of the covenant does not bar plaintiffs' efforts to prevent further erosion of the integrity of their neighborhood.

[9] Defendants' contention that the residential restriction must fall because of its conjunction with an unenforceable racial restriction is meritless. Although expressed as part of the same covenant, the two clauses are so clearly independent that one need not infect the other. The trial court and the Court of Appeals were correct in ignoring the racial restriction. *See, e.g., Callahan v. Weiland*, 279 So. 2d 451 (Ala. 1973); *Brideau v. Grissom*, 369 Mich. 661, 120 N.W. 2d 829 (1963).

A residential restriction such as that involved in the instant case is a distinct and valuable property right. Certainly it is so regarded by those who purchase realty in reliance upon it. When its purpose is clear, its operation clearly expressed, and its imposition violative of no rules of equity or public policy, it should be given effect to protect those who are entitled to its benefit. So it is in the case before us. Accordingly, the decision of the Court of Appeals that plaintiffs are entitled to injunctive relief should be and is hereby affirmed.

Affirmed.

Justice HUSKINS and BRITT dissent.