JACK E. STEGALL AND WIFE, ILSE F. STEGALL, AND ROBERT T. HORNE AND WIFE, LINDA S. HORNE v. NORMAN KENT ROBINSON, AND LISA ROBINSON HABISCH AND HUSBAND, MICHAEL BERNARD HABISCH

No. 8520SC1127

(Filed 1 July 1986)

**Deeds § 20.5— restrictions in subdivisions—requirements of title examiners—sufficiency of notice to purchasers**

    In title examination when checking the grantor's out conveyances it is not enough merely to insure that the subject property was not conveyed out previously; rather, the title examiner must read the prior conveyances to determine that they do not contain restrictions applicable to the use of the subject property. Defendants in this action had record notice of restrictive covenants governing a subdivision where the covenants were not recorded as part of the subdivision plat but were recorded with the first conveyance out of lots in the subdivision, and the restrictions were sufficiently unambiguous to be enforceable as a matter of law.

APPEAL by defendants from *Helms, Judge.* Judgment entered 22 August 1985 in Superior Court, UNION County. Heard in the Court of Appeals 6 March 1986.

Defendants appeal from summary judgment enforcing a restrictive covenant and ordering them to remove their mobile home from their lot in a residential subdivision.

*Smith & Cox, by Ronald H. Cox, for plaintiff-appellees.*

*Griffin, Caldwell, Helder & Steelman, by Sanford L. Steelman, Jr. and Jake C. Helder, for defendant-appellants.*

EAGLES, Judge.

The dispositive question presented here is whether defendants had record notice of restrictive covenants governing a subdivision, where the covenants were not recorded as part of the subdivision plat but were recorded with the first conveyance out of lots in the subdivision. Relying on *Reed v. Elmore*, 246 N.C. 221, 98 S.E. 2d 360 (1957), we hold that they did have record notice and therefore that the trial court properly entered summary judgment against them.

I

The parties own lots in Blocks B and C of the Boulevard Heights Subdivision, which was laid out in a plat filed by their mutual predecessor in title. No general restrictions were filed with the plat. Instead, the predecessors included in their first recorded conveyance out of lots in the subdivision a page entitled "Restrictions Applicable to Blocks B and C of Boulevard Heights, as Shown on [the recorded plat.]" The restrictions repeatedly referred to "this lot," but also referred to the "blocks restricted hereby," and provided for the waiver of certain restrictions, called "these restrictive covenants," by the owners of lots in the subdivision. Defendants installed a house trailer on their lot in violation of the terms of the restrictions. Plaintiffs sued for removal of the trailer. On stipulated facts, the court granted plaintiffs' motion for summary judgment and denied a similar motion by defendants. Defendants appeal.

II

Summary judgment is appropriate when the record before the court presents no genuine issue of material fact, but only questions of law. *See Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). Even if the questions of law are difficult, summary judgment may be proper. *Thomas v. Ray*, 69 N.C. App. 412, 317 S.E. 2d 53 (1984). The facts are not disputed here, only the legal effect of recorded instruments. The case was therefore ripe for summary judgment. Since the trial court decided only questions of law, its ruling is fully reviewable here. *N.C. Reins. Facility v. N.C. Ins. Guaranty Ass'n*, 67 N.C. App. 359, 313 S.E. 2d 253 (1984).

III

It is fundamental that our recording statutes are intended to provide a single reliable means for purchasers to determine the state of the title to real estate. G.S. 47-18; *Hill v. Pinelawn Mem. Park, Inc.*, 304 N.C. 159, 282 S.E. 2d 779 (1981). A purchaser accordingly has constructive notice of all duly recorded documents that a proper examination of the title should reveal. *Id.*

IV

In *Reed v. Elmore, supra*, the Supreme Court defined the parameters of a proper title examination. In *Reed* plaintiff and defendant owned adjoining parcels acquired from the same grantor. Plaintiff had purchased and recorded first. Plaintiff's deed contained a restriction against use of a portion of his property for building purposes, and recited that this restriction "shall likewise apply" to the land later acquired from grantor by defendant. The trial court found for plaintiff when plaintiff sued to enjoin building by defendant on the adjoining lot, and the Supreme Court affirmed. The Court held that there existed a uniform and enforceable plan of development, even though defendant's deed made no reference to plaintiff's deed. The covenant was not personal to the parties to plaintiff's deed, but ran with the land. The court quoted at length and with approval from *Finley v. Glenn*, 303 Pa. 131, 154 A. 299 (1931). There the parties also shared common grantors, who had covenanted to impose restrictions generally on their other properties adjoining that first conveyed to plaintiff. The Supreme Court of Pennsylvania upheld the restriction, and plaintiff's right to enforce it:

> The controlling factor in the decision of the case is that the immediate grantors of both plaintiff and defendants were the same. When the latter came to examine the title which was tendered to them, it was of primary consequence that they should know whether their grantors held title to the land which they were to convey. They could determine that question only by searching the records for grants from them. . . . So doing, defendants would find the deed from [grantors] to plaintiff which had been recorded. Coming upon this conveyance, it was their duty to read it, not, as argued by appellant and decided by the chancellor who heard the case, to read only the description of the property to see what was

conveyed, but to read the deed in its entirety, to note anything else which might be set forth in it. The deed was notice to them of all it contained; otherwise the purpose of the recording acts would be frustrated. If they had read all of it, they would have discovered that the lots which their vendors were about to convey to them had been subjected to the building restriction which the deed disclosed. It boots nothing, so far as notice is concerned, that they did not acquaint themselves with the entire contents of the deed.

303 Pa. at 135-36, 154 A. at 301, *quoted* 246 N.C. at 231, 98 S.E. 2d at 367-68. Simply stated *Reed* stands for the rule that in title examination when checking the grantor's out conveyances it is not enough to merely insure that the subject property was not conveyed out previously. The title examiner must *read* the prior conveyances to determine that they do not contain restrictions applicable to the use of the subject property.

V

This rule was vigorously criticized in the dissent in *Reed* itself. *Reed v. Elmore, supra* (Denny, J., dissenting). Focusing on the later purchaser's direct chain of title, Justice Denny contended that since the restriction asserted by plaintiff did not appear in that direct chain of title, the restriction was unenforceable as to defendant. *See also Maddox v. Arp*, 114 N.C. 585, 19 S.E. 665 (1894) (purchaser need only follow "up the stream of title"). The dissent quoted with approval from *Hege v. Sellers*, 241 N.C. 240, 84 S.E. 2d 892 (1954). There a general plan of restrictions was prepared, but not filed with the subdivision map. Instead it was included as part of each conveyance out by the common grantor to the lot owners, except for the conveyance out of the contested lot. The court, focusing on the chain of title to the particular lot at issue, held that the restrictions were not in the line of title and hence not enforceable. *Reed* was decided after *Hege*, however, and therefore controls.

Professor Webster spoke unkindly of the *Reed* rule:

In view of the holding of *Reed v. Elmore* a purchaser of real property in North Carolina must examine all recorded "out" conveyances made by prior record titleholders during the periods when they respectively held title to the property

to determine if any such owner has expressly imposed a restriction upon the use of the property. The difficulty in discovering all existent restrictive covenants that grow out of *Reed v. Elmore* is easily demonstrable. The case charges purchasers with constructive notice of all that "could be discovered by a search of the deeds and records, whether within the direct chain of conveyances or outside the direct chain of conveyances. Therefore, for safety's sake, the title examiner must look at each deed of any tract of land of both immediate and prior grantors that was executed during each one's ownership of the land in question. Furthermore, beyond requiring the title searcher to go beyond the index books into the actual deed books to look at deeds conveying lands other than the lands being searched, the title examiner must read *each* of these collateral deeds in *detail*, not merely their descriptions to find potential latent restrictions, servitudes, or easements imposed in such collateral deeds. When this requirement is considered with the rule existent that deeds are construed as a whole and meaning is given to every part without reference to formal divisions of the deed, it becomes obvious that the title searcher is given an entirely impracticable and unreasonable task. [Emphasis in original.] [Footnotes omitted.]

J. Webster, Webster's Real Property Law in N.C. Section 503 at 623-24 (Hetrick rev. ed. 1981).

While there is substantial well-reasoned criticism of the decision in *Reed v. Elmore, supra,* our research indicates *Reed* has not been overruled, expressly or implicitly, and therefore controls our decision here. We note that legislation has been proposed which would change the *Reed* rule. *See* J. Webster, Doubt Reduction through Conveyancing Reform—More Suggestions in the Quest for Clear Land Titles, 46 N.C. L. Rev. 284, 301-5 (1968). This proposed legislation has not been enacted by the General Assembly and ought not be the subject of judicial legislation by this Court. Notwithstanding its critics, *Reed* remains in effect and controls here.

## VI

Accordingly, defendants had record notice of the restrictions included with the first conveyance of lots in the Boulevard

Heights Subdivision. The only question remaining is whether the restrictions are sufficiently unambiguous to be enforceable as a matter of law. We conclude that they are. The restrictions are prominently titled "RESTRICTIONS APPLICABLE TO BLOCKS B AND C OF BOULEVARD HEIGHTS." They referred to "the blocks restricted hereby," not "lots," and provided for approval of other lot owners in the subdivision for exceptions. The restrictions are obviously of the type commonly used to restrict development in subdivisions. The references to "lot" or "lots" in the singular and plural, on which defendants peg their claim of ambiguity, are minor technical errors of drafting which cast no real doubt on the true purpose of the restrictions to provide a general standard for development in the subdivision. We hold that the restrictions unambiguously established the general plan and justified judgment as a matter of law for plaintiffs. *Reed v. Elmore, supra.*

## VII

We are aware of the policy reasons favoring a less stringent duty to read "out" conveyances. Nevertheless, we are bound to apply the law as established by our Supreme Court. Accordingly, judgment for plaintiffs must be affirmed.

Affirmed.

Judges ARNOLD and PHILLIPS concur.