PATTI JEAN GREGORY, JOHNNIE B. LYTTLE, A. C. SEWELL, T. A. SEWELL AND WIFE, NADINE S. SEWELL, EMILY G. TURNER, WILSON E. ANDERSON, AND LIDA M. STAPLETON, PLAINTIFFS v. ANNA F. FLOYD AND THOMAS E. NEWMAN, DEFENDANTS

No. 922DC454

(Filed 2 November 1993)

1. **Easements § 9 (NCI4th)— reference to "BEACH" on map and in deeds—easement created**

An easement appurtenant was created as to an area identified as the "BEACH" on subdivision maps where defendant and her husband recorded the subdivision map upon which all but two of the purchasers of property in the subdivision relied; this subdivision map set out the subdivided lots in the subdivision and further set out the location of the "BEACH"; and the deeds held by all the purchasers of homes in the subdivision, except the deed to one husband and wife, referred to this subdivision map.

**Am Jur 2d, Easements and Licenses §§ 17, 22, 23.**

GREGORY v. FLOYD

[112 N.C. App. 470 (1993)]

2. **Deeds § 68 (NCI4th)— conveyance of one lot in subdivision— duty of subsequent purchaser to investigate prior conveyance— notice of easement to subsequent purchaser**

Plaintiffs, at the time they originally took title to their lots, were on record notice that one lot in the subdivision had already been conveyed, and plaintiffs were therefore under a duty, regardless of the filing of the later subdivision map, to investigate that conveyance to see what it might contain relative to any conditions, easements, or dedications as to the remainder of the subdivision. Had plaintiffs done so, they would have discovered the easements specifically identified by the language in the prior deed and would have known that, though the map referred to a "BEACH" area extending from the waterfront through marshlands to the divided lots, the deed contained a specific reference to the "BEACH" with a more limited description.

**Am Jur 2d, Covenants, Conditions and Restrictions §§ 304-310.**

Appeal by plaintiffs from order entered 30 January 1992 by Judge Hallett Ward in Hyde County District Court. Heard in the Court of Appeals 13 April 1993.

*Carter, Archie & Hassell, by Sid Hassell, Jr., for plaintiffs-appellants.*

*Ward & Smith, P. A., by John M. Martin, for defendant-appellee Thomas E. Newman.*

*Davis & Davis, by George Thomas Davis, Jr., for defendant-appellee Thomas E. Newman.*

*Rodman, Holscher, Francisco & Peck, P. A., by Edward N. Rodman, for defendant-appellee Anna F. Floyd.*

JOHNSON, Judge.

This is an action brought by plaintiff homeowners in a subdivision in response to plans by the original owner of the entire subdivision to sell off the remaining portions of the land, in particular, a portion believed to be a "common area," identified on the recorded plat as "BEACH."

GREGORY v. FLOYD

[112 N.C. App. 470 (1993)]

The facts of this appeal are as follows: On 14 October 1970, E. V. Floyd (now deceased) and wife, defendant Anna F. Floyd, had a survey prepared and recorded with the Registrar of Deeds in Hyde County of a subdivision of certain lands owned by them as tenants by the entirety. This subdivision map identified specific lots in the subdivision, but made no reference to a "BEACH." On 8 March 1971, E. V. Floyd and Anna F. Floyd conveyed one lot identified in this subdivision plat to George G. Williams and wife, Mildred M. Williams. This conveyance contained the following language, which followed a metes and bounds description of the property:

> The foregoing courses are magnetic as of 1970 and this lot will be designated as Lot No. "49" on the final sub-division map of the Swan Quarter Canal Property.

> The parties of the first part do also convey to the parties of the second part, their heirs and assigns . . . an easement or right to use the boat ramp that has been constructed and is now located on the Southwest side of Fodrey Creek, together with a right to use the crescent beach located on the Southwest side of Fodrey Creek, which beach is located approximately 65 feet in a southwestwardly direction from the Southwest edge of the above referred to ramp and said beach has a water front of 100 feet and is 30 feet deep.

On 5 April 1971, another subdivision plat of this subdivision was prepared and on 28 June 1971 was recorded with the Registrar of Deeds in Hyde County. On this map, the location of the boat ramp is indicated by an arrow and the word "BEACH" is written in the unsubdivided portion of the property.

When the Floyds were marketing this subdivision, they distributed a flyer which advertised that one could "Fish from the 1 mile of Island Shoreline," and that there was a "Boat Ramp and Sandy Beach for use of lot owners." The map of the subdivision on this flyer has a handwritten notation indicating the location of the "BEACH." At least one of the plaintiffs was given a copy of this flyer.

Over the years, the lots identified in the subdivision map were sold to various parties; in addition, four parcels of land within the unsubdivided area were sold. These lands sold which were within the unsubdivided area have not been improved since they were sold.

GREGORY v. FLOYD

[112 N.C. App. 470 (1993)]

On 2 June 1989, E. V. Floyd and defendant Anna F. Floyd contracted to sell their remaining interest in the subdivision to defendant Thomas E. Newman. Upon notice of this pending sale, plaintiffs brought this suit.

On 18 September 1991, each defendant filed a motion for summary judgment. On 30 January 1992, the trial judge granted summary judgment in favor of defendant Newman as to all plaintiffs, and summary judgment in favor of defendant Floyd as to all plaintiffs except Johnnie B. Lyttle and Wilson E. Anderson. From this order, plaintiffs appeal to our Court.

Plaintiffs argue the trial court committed reversible error in allowing summary judgment in favor of defendant Newman and in favor of defendant Floyd (except as to the claims of plaintiffs Lyttle and Anderson) because there were genuine issues of fact as to whether the actions of the developers created a private easement in all of the unsubdivided portion of the subdivision in favor of the purchasers of the numbered lots therein. Particularly, plaintiffs assert that they, as lot owners in this subdivision, "had private easements in all of the unsubdivided lands in the subdivision by dedication or estoppel from the developers." Plaintiffs rely upon the recorded plat which labels this unsubdivided land within the subdivision as "BEACH."

Summary judgment is appropriate only when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. North Carolina General Statutes § 1A-1, Rule 56 (1990). The moving party has the burden of establishing the lack of any triable issue, and may meet this burden by proving that an essential element of the opposing party's claim is nonexistent. All inferences of fact from the proof offered at the hearing must be looked at in the light most favorable to the nonmoving party. *Mozingo v. Pitt County Memorial Hospital*, 331 N.C. 182, 415 S.E.2d 341 (1992).

[1] At issue in this case is whether an easement appurtenant was created and if so, the extent to which this easement exists. An easement appurtenant is an easement which attaches to, passes with, and is incident of ownership of the particular tract of land; this easement may be created by dedication, may be either a formal or informal transfer, and may be either express or implied. *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 418 S.E.2d 841

(1992); *Gibbs v. Wright*, 17 N.C. App. 495, 195 S.E.2d 40 (1973); *Spaugh v. Charlotte*, 239 N.C. 149, 79 S.E.2d 748 (1954).

As indicated in *Shear*, 107 N.C. App. at 162, 418 S.E.2d at 846, our Supreme Court set out the applicable rules for the establishment of an appurtenant easement by the use of a plat map in *Realty Co. v. Hobbs*, 261 N.C. 414, 421, 135 S.E.2d 30, 35-36 (1964):

> Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement. (Citations omitted.) It is said that such streets, parks and playgrounds are *dedicated* to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. (Citation omitted.) (Emphasis in original.) It is a right in the nature of an easement appurtenant. Whether it be called an easement or a dedication, the right of the lot owners to the use of the streets, parks and playgrounds may not be extinguished, altered or diminished except by agreement or estoppel. (Citations omitted.) This is true because the existence of the right was an inducement to and a part of the consideration for the purchase of the lots. (Citations omitted.) Thus, a street, park or playground may not be reduced in size or put to any use which conflicts with the purpose for which it was dedicated. (Citations omitted.)

*See also Hinson v. Smith*, 89 N.C. App. 127, 365 S.E.2d 166, *disc. review denied*, 323 N.C. 365, 373 S.E.2d 545 (1988), where an area designated as "Beach" on a recorded subdivision plat was held dedicated to the private use of the owners and purchasers of lots in the subdivision.

The record herein reveals that E. V. Floyd and Anna F. Floyd recorded the subdivision map upon which all of the purchasers of property in the subdivision (except George G. Williams and Mildred M. Williams and subsequent purchasers of their property) relied on 28 June 1971. This subdivision map sets out the subdivided lots for sale in the subdivision, and further sets out the location of the "BEACH." The deeds held by all of the purchasers of homes in this subdivision (except the Williams' deed and subsequent purchasers of their property) refer to this subdivision map. Pursuant

**GREGORY v. FLOYD**

[112 N.C. App. 470 (1993)]

to *Shear* and *Hinson*, we have examined the contents of the subdivision map herein and the actions of E. V. Floyd and Anna F. Floyd in selling and conveying these lots in reference to this map, and we find that an easement has been created as to this area identified as the "BEACH." We now address the extent of this easement.

[2] Plaintiffs argue that because the subdivision map refers to a "BEACH" area extending from the waterfront through the marshlands to the divided lots, this entire area should be considered the "BEACH." Defendants argue that because the Williams' deed contains a specific reference to the "BEACH" with a more limited description, this description should control, and that therefore, the marshlands lawfully belong to Anna F. Floyd.

In *Stegall v. Robinson*, 81 N.C. App. 617, 344 S.E.2d 803, *disc. review denied*, 317 N.C. 714, 347 S.E.2d 456 (1986), our Court made reference to *Reed v. Elmore*, 246 N.C. 221, 98 S.E.2d 360 (1957), which discussed the performance of a proper title examination. In *Reed*, our Supreme Court quoted with approval from *Finley v. Glenn*, 303 Pa. 131, 154 A. 299 (1931):

> The controlling factor . . . is that the immediate grantors of both plaintiff and defendants were the same. When the latter came to examine the title which was tendered to them, it was of primary consequence that they should know whether their grantors held title to the land which they were to convey. They could determine that question only by searching the records for grants from them. . . . 'The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly recorded, the record is constructive notice to a subsequent purchaser of the latter parcel. The rule is based generally upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor.' (Citations omitted.)

*Reed*, 246 N.C. at 231, 98 S.E.2d at 367. As noted in *Stegall*, Professor Webster speaks unkindly of this rule:

> In view of the holding of *Reed v. Elmore*, a purchaser of real property in North Carolina must examine all recorded "out" conveyances made by prior record titleholders during

the periods when they respectively held title to the property to determine if any such owner has expressly imposed a restriction upon the use of the property. The difficulty in discovering all existent restrictive covenants that grow out of *Reed v. Elmore* is easily demonstrable. The case charges purchasers with constructive notice of all that "could be discovered by a search of the deeds and records, whether within the direct chain of conveyances or outside the direct chain of conveyances. . . . When this requirement is considered with the rule existent that deeds are construed as a whole and meaning is given to every part without reference to formal divisions of the deed, it becomes obvious that the title searcher is given an entirely impracticable and unreasonable task.

J. Webster, Webster's Real Property Law in N.C. § 503 at 687-88 (Hetrick and McLaughlin, rev. ed. 1988). Nonetheless, *Reed* remains good law today.

Therefore, we find plaintiffs, at the time they originally took title to their lots, were on record notice that one lot in this subdivision had already been conveyed, and plaintiffs therefore were under a duty to investigate that conveyance to see what it might contain relative to any conditions, easements or dedications as to the remainder of the subdivision. This was plaintiffs' duty regardless of the filing of the later subdivision map. Had plaintiffs done so, they would have discovered the easements specifically identified by the language in the Williams conveyance relative to the use of the boat ramp and the location and description of the crescent beach.

We note these easements specifically identified by the language in the Williams' deed and appearing on the later subdivision map are easements which have been granted to all homeowners in the subdivision, as all of the homeowners' deeds refer to this later subdivision map upon which the "BEACH" and boat ramp appear.

We find the trial judge properly allowed summary judgment in favor of defendant Newman and in favor of defendant Floyd (except as to the claims of plaintiffs Lyttle and Anderson) because no genuine issues of fact exist as to the extent of the easement which was created.

The decision of the trial court is affirmed.

Judges ORR and McCRODDEN concur.