DAVID L. HARRY, JR. AND WIFE, MARY C. HARRY, PLAINTIFFS v. CRESCENT RESOURCES, INC., DEFENDANT, AND TIMOTHY G. KORNEGAY, ADDITIONAL DEFENDANT

No. COA98-1598

(Filed 21 December 1999)

## 1. Deeds— restrictive covenants—negative appurtenant easement

The trial court did not err in concluding plaintiffs, owners of residential lots in the pertinent subdivision, did not have a property right in the nature of a negative appurtenant easement limiting the use of the remnant parcels to undeveloped open space based on their deeds and the deeds of their predecessors in title describing their property with reference to the subdivision plat on which the four remnant parcels appear as open undeveloped space because: (1) plaintiffs' property adjoined the waters of the lake, so that they did not need access over the remnant parcels to reach its waters; (2) there is no evidence of record that the developer sold the lots to plaintiffs and their neighbors based on representations that the remnant parcels would remain open and undeveloped, or that plaintiffs purchased the lots based on the

representations or actions of the developer; and (3) plaintiffs do not have an easement appurtenant in and to the remnant parcels merely because the parcels appeared on the recorded subdivision plat.

**2. Deeds— restrictive covenants—doctrine of implied equitable servitudes—doctrine of common servitudes**

Although plaintiffs, owners of residential lots in the pertinent subdivision, argue the doctrine of implied equitable servitudes applies to this case to show the developer of the subdivision plat intended to impose a common servitude on the unnumbered remnant parcels, North Carolina has not adopted that doctrine and the Court of Appeals declined to extend our similar doctrine of common servitudes because there is nothing of record to give notice to purchasers that the remnant parcels are part of a common scheme of development, and the evidence indicates otherwise.

**3. Unfair Trade Practices— sufficiency of evidence**

The trial court did not abuse its discretion in denying plaintiffs' motion to amend their complaint to allege a claim for unfair and deceptive acts arising out of the sale of remnant parcels of land where plaintiffs own residential lots in the pertinent subdivision because there is no support for such a cause of action in the record.

Appeal by plaintiffs from judgment entered 24 July 1998 by Judge James U. Downs in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 October 1999.

In 1969, Duke Power Company conveyed certain real property surrounding Lake Norman to Crescent Land & Timber Corporation, now known as Crescent Resources, Inc. (Crescent). One of the conveyed tracts was Parcel No. 28, known as the P. A. Stough Tract. On 4 May 1976, Crescent filed a plat (the subdivision plat) in the Mecklenburg County Registry subdividing a portion of the P. A. Stough Tract into five residential building lots. The plat also dedicated two 60-foot rights-of-way, known as Torchlight Drive (now Belle Isle Drive) and Mollypop Lane. Four small, unnumbered, irregularly-shaped parcels of land (the remnant parcels) were left over from the creation of the lots, streets, and causeways on the subdivision plat. The remnant parcels were smaller than the residential lots; three of the remnants were .25 acre, and the fourth remnant was .43

acre. The five residential building lots on the subdivision plat were numbered 28 through 33, and ranged in size from 0.58 acres to 1.44 acres. Each remnant parcel had an assessed value of $150.00 for property tax purposes.

The five residential lots were sold by reference to the subdivision plat. The plaintiffs, David L. Harry, Jr., and wife, Mary C. Harry, own one of the lots, identified as Lot No. 32. Each of the conveyances in the plaintiffs' chain of title refer to the subdivision plat. Each of the deeds conveying the five residential lots contained detailed restrictions and conditions, including a restriction on further subdivision of the lot conveyed, which applied to the use of the lots.

On 29 July 1997, Crescent contracted to sell the remnant parcels to the additional defendant, Timothy G. Kornegay (Kornegay) for $101,000.00. In September of 1997, Kornegay obtained building permits to allow him to construct recreational piers extending from the remnant parcels. Kornegay also applied to the Charlotte-Mecklenburg Utilities Department for the extension of utility lines to one of the remnant parcels.

On 12 November 1997, plaintiffs brought this action seeking a declaration that the remnant parcels could not be used "for any purpose" and must be "held and maintained by [Crescent] and its successors in title as undeveloped open space" for the benefit of plaintiffs and four of their neighbors. Crescent deeded the four remnant parcels to Kornegay in March 1998. The restrictions in the deeds to Kornegay did not contain any covenant against further subdivision of the parcels, nor were there building setback restrictions. The language of the deeds limit the use of the remnant parcels to "recreational purposes." Crescent also agreed to release a restriction against residential use if the lots became "buildable," and if Kornegay paid a release fee of $99,000.00 per lot. Following the conveyance of the remnant parcels, plaintiffs moved to join Kornegay as an additional party defendant, and also moved to amend their complaint to allege unfair and deceptive trade practices arising out of the sale of the parcels to Kornegay. Both plaintiffs and defendant Crescent moved for summary judgment. The trial court (1) ordered Kornegay to be joined as an additional party defendant; (2) denied the motion to amend the complaint to add a claim for unfair and deceptive trade practices; (3) denied plaintiffs' motion for summary judgment; and (4) granted defendants' motion for summary judgment on the plaintiffs' claim for easement rights, but denied defendants' motion for

summary judgment on the plaintiffs' claim to have building setback lines enforced. Plaintiffs appealed, and the trial court certified the matters appealed from as subject to immediate review by this Court under Rule 54(b).

*The Tryon Legal Group, by Jerry Alan Reese, for plaintiff appellants.*

*Robinson, Bradshaw & Hinson, P.A., by Robert C. Sink, for Crescent Resources, Inc., defendant appellee.*

*Rayburn, Moon & Smith, P.A., by James B. Gatehouse and Tricia L. Rolewicz, for Timothy G. Kornegay additional defendant appellee.*

HORTON, Judge.

[1] Plaintiffs contend that they have a property right in the nature of "a negative appurtenant easement limiting the use of the Remnant Parcels to undeveloped open space" because their deeds, and those of their predecessors in title, describe their property with reference to the subdivision plat on which the four remnant parcels appear as open undeveloped space. We disagree, and affirm the judgment of the trial court.

An appurtenant easement is

an easement created for the purpose of benefitting particular land. This easement attaches to, passes with and is an incident of ownership of the particular land. *Gibbs v. Wright*, 17 N.C. App. 495, 195 S.E.2d 40 (1973). It is well settled in this jurisdiction that an easement may be created by dedication. This dedication may be either a formal or informal transfer and may be either implied or express. *Spaugh v. Charlotte*, 239 N.C. 149, 79 S.E.2d 748 (1954).

*Shear v. Stevens Building Co.*, 107 N.C. App. 154, 161-62, 418 S.E.2d 841, 846 (1992). When a developer sells residential lots in a subdivision by reference to a recorded subdivision plat which divides the tract of land into "streets, lots, parks and playgrounds," a purchaser of one of the residential lots "acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement." *Realty Co. v. Hobbs*, 261 N.C. 414, 421, 135 S.E.2d 30, 35-36 (1964) (citations omitted). The right acquired by the purchaser, whether it be characterized

as a dedication or as an appurtenant easement, may not be revoked over the objection of the purchaser because "the existence of the right was an inducement to and a part of the consideration for the purchase of the lots." *Id.*

With two exceptions which we will discuss below, North Carolina appellate decisions have dealt with appurtenant easements in the context of subdivision plats on which the various tracts had been labeled to designate the particular uses for which the tract was intended. For example, in *Realty Co. v. Hobbs*, the land in question was designated for "golf links and playgrounds." In *Conrad v. Land Co.*, 126 N.C. 776, 36 S.E. 282 (1900), an area on the plat was marked as "Grace Court," and was surrounded by areas designated for streets. Our Supreme Court held that Grace Court and the streets shown on the plat "should forever be open to the purchasers and to the public." *Id.* at 780, 36 S.E.2d at 283.

The Court reasoned that the purchasers "had been induced to buy under the map and plat, and the sale was based not merely on the price paid for the lots, but there was the further consideration that the streets and public grounds *designated on the map* should forever be open to the purchasers and their assigns." *Id.* (emphasis added). *See also Stines v. Willyng, Inc.*, 81 N.C. App. 98, 344 S.E.2d 546 (1986) (area on plat designated as "Park Property" burdened with easement in favor of purchasers of lots, but areas not shown on plat not sufficiently described to be burdened with an easement), *Hinson v. Smith*, 89 N.C. App. 127, 365 S.E.2d 166, *disc. review denied*, 323 N.C. 365, 373 S.E.2d 545 (1988) (area in question shown on plat as "Beach"); *Gregory v. Floyd*, 112 N.C. App. 470, 435 S.E.2d 808 (1993) (on amended plat, location of the boat ramp indicated by an arrow, and "BEACH" written in the unsubdivided part of the property); and *Whichard v. Oliver*, 56 N.C. App. 219, 287 S.E.2d 461 (1982) (plats showed "streets, lots, parks and beaches").

Here, the remnant parcels in question were described by metes and bounds on the subdivision plat, but were not designated for any specific purpose, such as streets, parks, playgrounds, or beaches. Plaintiffs rely, however, on the decision of our Supreme Court in *Gaither v. Albemarle Hospital*, 235 N.C. 431, 70 S.E.2d 680 (1952), and the decision of this Court in *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 418 S.E.2d 841 (1992), to support their position that they have an easement in the remnant parcels although the parcels were not labeled in any way on the subdivision plat from which plaintiffs purchased their lot.

In *Gaither*, Riverside Land Company recorded a plat in 1902 which divided the lands it owned along the Pasquotank River (River) into 50-foot building lots. A street designated as Riverside Avenue ran along the eastern edge of the River. Between Riverside Avenue and the high water mark of the River was a strip of land which was wide enough in some areas to be divided into numbered building lots, although some had a depth of much less than 50 feet. The strip of land between Riverside Avenue and the River narrowed to 6 feet or less in the area of the lots owned by plaintiff Gaither, and was not divided into lots or numbered. Gaither owned four building lots on the eastern edge of Riverside Avenue. Thus Gaither's lots were separated from the River by Riverside Avenue and the strip of land. Elizabeth City and Pasquotank County wanted to build a breakwater in the River 150 feet from the shoreline and in front of the plaintiff's lots, and then fill in the area between the breakwater and the shore for the purpose of building a public park. The trial court appointed a referee to ascertain the facts in the matter. Among other things, the referee concluded

"4. That by recording the plat in Book 26, at page 236, and indicating on said plat that there was only a narrow bank between Riverside Avenue and the waters of Pasquotank River, and by failing to indicate that said narrow strip of bank had been subdivided and by selling lots in said subdivision by plat and lot number, the Riverside Land Company dedicated such narrow strip or bank to the use of the public in reaching the waters of Pasquotank River.

\* \* \* \*

"6. . . . That the said proposed construction of the park should be enjoined as a nuisance."

*Gaither*, 235 N.C. at 438, 70 S.E.2d at 686.

The trial court adopted almost all of the referee's report and held as a matter of law that the "defendants [were] estopped and precluded from construction of said proposed park." On appeal to our Supreme Court, appellants raised the following question:

"Does the recordation of the Riverside Land Company plat, showing a strip of land to the east of Riverside Avenue as undivided land, constitute a dedication of the strip for such a purpose as to give the plaintiffs a special property right therein sufficient to support their original complaint?"

*Id.* at 442, 70 S.E.2d at 690. The Court first stated the general rule that a landowner who subdivides his land into "lots, streets, alleys, and parks," records a plat showing that subdivision, and then sells lots pursuant to that plat, "thereby dedicates the streets, alleys, and parks . . . to the use of the purchasers, and those claiming under them, and of the public." *Id.* at 443, 70 S.E.2d at 690. The general rule is based on principles of equitable estoppel, because purchasers who buy lots with reference to a plat are induced to rely on the implied representation that the "streets and alleys, courts and parks" shown thereon will be kept open for their benefit. Consequently, the grantor of the lots is "equitably estopped, as well in reference to the public as to his grantees, from denying the existence of the easement thus created." *Id.* at 444, 70 S.E.2d at 690.

The Court then discussed the right of access to the navigable waters of the Pasquotank River, and held that "the Riverside Land Company, being a riparian owner of land fronting on Pasquotank River, a navigable stream, shown on, and in accordance with, the plat by which it sold lots, had the right to grant to purchasers of such lots access over its water frontage land to the waters of the river. And the conclusions of law on the facts found appear logical." *Id.* at 445, 70 S.E.2d at 691. The Court then discussed the question of the proposed park project as a nuisance, and held that the "fact that the obstruction may be a source of public benefit has been held not to relieve it of its character as a nuisance." The Court then affirmed the decision of the trial court, with one Justice dissenting on the "question of dedication." *Id.* at 445-46, 70 S.E.2d at 692.

Plaintiffs contend that the decision in this case is controlled by the reasoning of the Supreme Court in *Gaither*. We disagree. In *Gaither*, the undesignated strip of land between the River and Riverside Drive was described as no more than six feet wide at any point. As the strip widened, however, it was divided into lots and the lots were numbered. The finding of the Referee, to which no exception was taken, reads as follows:

"4. That said plat indicates numerous lots, laid off and numbered for purpose of sale to the public. That on the eastwardly course of Riverside Avenue there were numerous 50-foot lots, laid off and numbered, between said Riverside Avenue and the Pasquotank River. That some of the lots were of a depth between Riverside Avenue and Pasquotank River of as little as 9 to 18 feet. That, specifically, the lot designated as No. 161 had a depth on one side of 9 feet and on the other side of 12 feet; that Lot No. 162

had a depth on one side of 12 feet and on the other of 15 feet; that Lot No. 163 had a depth on one side of 15 feet and on the other side 24 feet. That on the course of Riverside Avenue running south 4 deg. west where there was indicated a strip of land no more than six feet wide at any point no lots were laid off and numbered."

*Id.* at 434, 70 S.E.2d at 684.

A person who bought lots in reliance on the plat at issue in *Gaither* could have reasonably assumed that when the strip of land between the River and Riverside Avenue narrowed to six feet or less, it became unsuitable for building lots and would not be used for the same. In the case now before us, the remnant parcels were smaller than other residential lots shown on the plat, but were substantially larger than a "strip" of land. Further, the *Gaither* plaintiff and others who purchased lots on the east side of Riverside Avenue had no other access to the River and could reasonably assume that the "narrow strip" or "narrow bank" of land gave them access to the River. In the case before us, however, the property of the plaintiffs adjoined the waters of the lake, so that they did not need access over the remnant parcels to reach its waters. Finally, in *Gaither* the "small strip of land" was not described on the plat by metes and bounds as were the remnant parcels in the case before us. We also note that in *Gaither* there were several legal theories which supported an injunction against the proposed park project, including the theory that it would constitute a nuisance in a navigable stream.

In *Shear*, the second case relied on by plaintiffs, residential lots were sold by the Stevens Corporation in the subdivision known as Cardinal Hills in Raleigh. The Stevens Corporation was the predecessor of a partnership, the Stevens Building Company (collectively, the developers). The plat map for Cardinal Hills, filed in 1956 and revised in 1957, depicted about 300 subdivided lots, in addition to a lake known as White Oak Lake, and undeveloped areas surrounding the lake. The undeveloped areas included a playground. There was nothing on the Cardinal Hills' plat to indicate that White Oak Lake was reserved for future development. Further, there was no reference in either the deeds or the restrictive covenants to an easement relating to use of the lake nor were there any restrictions upon its use. The plaintiffs in *Shear* presented evidence that purchasers of lots in Cardinal Hills were told that the use of White Oak Lake was for residents of the subdivision; that residents of the subdivision commonly used the lake; that various residents attempted to buy portions of the

undeveloped property around the lake to insure their access to the lake, but were told that the undeveloped land around the lake was for the use of the community; that residents were encouraged to maintain the portion of the undeveloped land adjoining their property. Plaintiffs also introduced evidence of newspaper advertisements for lots in Cardinal Hills which described the lots as overlooking "one of Wake County's most beautiful lakes." *Shear*, 107 N.C. App. at 158, 418 S.E.2d at 843-44. Advertisements for homes described them as "lakefront" homes or as homes "with a view of the lake." *Id.* at 158, 418 S.E.2d at 844.

In 1988, the developers were notified that the earthen dam which created White Oak Lake was in need of repair. If the dam were not repaired, the lake would eventually have to be drained. Developers partially drained the lake and then filed a plat map in 1988, dividing the undeveloped land around the lake and the additional land obtained by draining the lake into 24 building lots. Plaintiff landowners filed suit to enjoin the sale of the lots. The trial court ordered that the landowners had an easement appurtenant to the lake; that the developers had a right to develop a portion of such lands but that some land needed to remain open to accommodate the easement; that the lake should be maintained at the level shown on the 1988 plat; and that the developers and the landowners should divide the costs of maintaining the lake and dam. All parties appealed. This Court held that the trial court erred in its conclusion that the plaintiff landowners had an easement only to the lake. Although some of the language in the Court's discussion of the issues seems to support the Harrys' position, the dispositive holding of the Court appears to be that

> [t]he easement for the benefit of the Cardinal Hills landowners was created simultaneously with the Cardinal Hills development in the late 1950's. The easement was created by (1) selling and conveying lots with reference to the plat map, (2) making oral representations about the availability and permanency of the lake and the undeveloped land surrounding the lake and (3) using the landowners' opportunity to use these areas as an inducement to sell lots. Therefore, it is only logical to conclude that the easement was both to the lake and to the undeveloped land as it existed in the late 1950's.

Thus, in *Shear* there was ample evidence, in the form of the developer's oral representations and actions, of the developer's intent to create an easement to both the lake and the surrounding property. In the case before us, there is no evidence of record that the developer

sold the lots to the plaintiffs and their neighbors based on representations that the remnant parcels would remain open and undeveloped, nor that the plaintiffs purchased the lots based on the representations or actions of the developer. Further, the plaintiffs have waterfront access to the lake without recourse to the access provided by the remnant parcels.

In summary, the plaintiffs argue they have an easement appurtenant in and to the remnant parcels merely because the remnant parcels appeared on the recorded subdivision plat. That position is not supported by our prior decisions nor those of our Supreme Court. Furthermore, we do not believe that plaintiffs' position is grounded in sound public policy. The free use of property is favored in our State. When there are doubts about the use to which property may be put, those doubts should be resolved in favor of such free use. *Hullett v. Grayson*, 265 N.C. 453, 144 S.E.2d 206 (1965). Here, the fact that the remnant parcels were depicted on the subdivision plat is not sufficient to demonstrate a clear expression of the intent of Crescent to grant an easement appurtenant to the plaintiffs. Plaintiffs do not forecast evidence from which we could find a clear expression of such intent, nor do plaintiffs offer evidence that they were induced to purchase their property by the oral representations or actions of the developer with regards to the remnant parcels. In the absence of a forecast of such evidence, the trial court properly entered summary judgment for the defendants and against the plaintiffs on their claims for establishment of an easement, and for a permanent injunction against development of the remnant parcels.

[2] Plaintiffs also contend that the doctrine of implied equitable servitudes applies in this case. Under that doctrine, the owners of lots in a subdivision in which most of the lots were conveyed subject to common restrictions, may impose those restrictions against persons whose deeds did not include such restrictions, but who were on notice that such restrictions applied to the lots in the subdivision. We have not adopted the doctrine of implied equitable servitudes in North Carolina, although our Supreme Court has recognized that

> when an owner of a tract of land subdivides it and conveys distinct parcels to separate grantees, imposing common restrictions upon the use of each parcel pursuant to a general plan of development, the restrictions may be enforced by any grantee against any other grantee. Moreover, the right to enforce may be exercised by subsequent grantees against any purchaser who takes

land in the tract with notice of the restrictions. A purchaser has such notice whenever the restrictions appear in a deed or in any other instrument in his record chain of title. . . .

That a subdivision has been developed pursuant to a "general plan" of common restrictions is, of course, a statement of legal conclusion that the grantor *intended* to impose a common servitude upon all the parcels conveyed for the mutual benefit of all the grantees and their successors.

*Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 665, 268 S.E.2d 494, 497-98, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 442 (1980) (emphasis in original). In the case before us, plaintiffs argue that the common scheme of development restricted building lots to a minimum size of 30,000 square feet. Assuming for the purposes of argument there was such a common scheme, the subdivision plat in this case reveals that only three of the five residential building lots shown thereon were at least 30,000 square feet in size. Further, there is no evidence that the developer intended to impose a common servitude on the unnumbered remnant parcels. Indeed, plaintiffs contend that the remnant parcels were not intended to be sold at all, but rather held as open undeveloped parcels for the benefit of plaintiffs and their neighbors. We decline to extend the doctrine of common servitudes, as it is set forth in *Hawthorne*, to the situation in this case. Here, there is nothing of record to give notice to purchasers that the remnant parcels are part of a common scheme of development, and the evidence indicates otherwise.

[3] Finally, we find nothing in the record to demonstrate that the trial court's denial of plaintiffs' motion to amend their complaint to allege a claim for unfair and deceptive acts was an abuse of its discretion. *Isenhour v. Universal Underwriters*, 345 N.C. 151, 478 S.E.2d 197 (1996). Indeed, we do not find support for such a cause of action in this record. Consequently, plaintiffs' assignment of error is denied.

Affirmed.

Judges WYNN and EDMUNDS concur.