.JOSEPH LAMB v. W. J. LAMB.

(Filed 26 February, 1919.)

**1. Easements—Drainage Systems—Implied Rights—Lands—Wills—Devise.**

Where lands are severed and held by devise, and during the testator's life he has constructed thereon a drainage system for the entire tract of a permanent nature, the right to the use of the system will pass by implication to the separate owners of the lands as apparent easements, though they may not originally have had any legal existence as such, as well as those necessary easements without which the enjoyment of the several portions could not be fully had.

**2. Same—Dominant Owner—Liability—Maintenance—Repairs—Negligence.**

Where a drainage system of an entire tract of land has passed as a right of easement to the devisees of the original owner, who holds the same in separate tracts, the dominant owner of the lands is only liable for maintenance and repairs to the extent that they are necessary and beneficial to his own estate; and while in the exercise of his right of enjoyment of his own part of the system he may enter upon the lands of the servient owner for the purpose of maintenance and repairs, with liability also for damages caused thereto by his willful or negligent breach of duty, the servient owner, who is also making use of the system, may not require the owner of the dominant estate to keep the drainage system on the servient owner's land in proper condition, at his own expense, for the latter's benefit.

**3. Easements—Drainage Systems—Dominant and Servient Tenant—Maintenance and Repairs—Liability.**

Where separate owners of lands have derived them subject to a drainage system placed upon the entire tract by the original owner, the general rule is, in the absence of statutory or contract provision controlling the matter, that each one using the system must bear the costs of maintenance and repair required by the portion of the system on his own premises, unless this adjustment would work such gross inequality of burden in the particular case as to require a different and more equitable one.

BROWN, J., not sitting.

ACTION tried before *Bond, J.,* and a jury, at July Term, 1914, of CAMDEN.

The action was instituted. by plaintiff, the lower proprietor, against the defendant, adjoining and upper proprietor, to recover damages for flow of water wrongfully diverted upon plaintiff's land, and for damages caused by failure on part of defendant to clear off and properly maintain on plaintiff's land certain lead ditches running through both tracts, whereby it was claimed that plaintiff's land was sobbed and injured.

On specific issue submitted, there was verdict of the jury negativing the charge of wrongful diversion, and, his Honor having ruled that, on the facts in evidence, no recovery could be had on the second aspect of the case, there was judgment on the verdict for defendant, and plaintiff excepted and appealed.

LAMB *v.* LAMB.

*Aydlett, Simpson & Sawyer for plaintiff.*
*Ehringhaus & Small for defendant.*

HOKE, J., after stating the case: The facts in evidence tended to show that the plaintiff and defendant were adjoining proprietors of two tracts of land, the plaintiff owning the lower tract, along certain lead ditches hereinafter referred to; that they had obtained these tracts of land from their respective fathers, and they in turn held them under a devise from the grandfather, Abner Lamb; that Abner Lamb owned the land as one tract and during his possession had constructed a system of drains and ditches through the same, and at his death he divided the land into two tracts, described in the complaint, the lower of which has become the property of plaintiff and the upper the property of defendant, and at the time of his death and the different transfers these ditches and drains were openly maintained and used for the benefit of the land and its proper tillage; that the lead ditches ran from defendant's land through plaintiff's and on through lands of lower proprietors into a swamp, the ultimate and natural outflow, "and there were tap or side ditches of defendant running across his lands from lead to lead, and draining into the lands and then on through plaintiff's land, as stated; and that, on plaintiff's land, the latter, by his side or tap ditches, drained into these leads." There was also allegation, with supporting evidence on the part of plaintiff, tending to show that, some time prior to the institution of the suit, defendant had failed and refused to clear off and keep open the portion of these lead ditches which were on plaintiff's land, and by reason of such failure the same had proved inadequate to the proper drainage of plaintiff's property, causing damage thereto. It was shown, further, "that defendant had offered, in connection with plaintiff and others using the three big drains, or lead ditches, to pay his *pro rata* part of cutting out the ditch from end to end along with plaintiff and others using the same."

Upon these, the facts chiefly relevant to the question presented, and under authoritative decisions here and elsewhere, an easement was created, constituting the upper tract the dominant tenement and conferring on the owner the right of drainage over the lower by means of these lead ditches referred to, it appearing that Abner Lamb, the grandfather, when owner of the land as one tract, had established thereon an artificial system of drainage, continuous and permanent in its nature and openly used and enjoyed for the benefit of the entire property at the time the same was separated into two tracts and passed by devise to his sons, from whom the present parties acquired their titles, respectively. *Hair v. Downing,* 96 N. C., 172; *Shaw v. Etheridge,* 48 N. C., 301; *Mitchell v. Seipel,* 53 Md., 251; *Scott v. Moore,* 98 Va., 668; *Sanderlin v. Baxter,* 76 Va., 299; *Fayter v. North,* 30 Utah, 156; *Elliott v. Rhett,* 35 S. C.,

405; 3 Farnham on Waters and Water Rights, pp. 2440 *et seq.* In this last the South Carolina case the general principle applicable is well stated, as follows:

"Apart from all considerations as to time, there is implied, upon the severance of a heritage, a grant of all those continuous and apparent easements which have been used by the owner during the unity, though they have had no legal existence as easements, as well as all those necessary easements without which the enjoyment of the several portions could not be fully had."

We do not understand that the appellant desires to question the correctness of the principle as stated, but it is urged in his behalf that when the defendant's property has been constituted the dominant tenement, giving its owner an easement of drainage, as claimed, such owner has thereby become responsible for the costs and charges required for the upkeep of the ditches on the lands of plaintiff and is liable for damages caused by a breach of duty in this respect. It is undoubtedly the general rule that, in the absence of contract stipulation or prescriptive right to the contrary, the owner of an easement is liable for costs of maintenance and repairs where it exists and is used and enjoyed for the benefit of the dominant estate alone; that he has a right of entry upon the servient estate for the purpose indicated, and may be held liable for injuries arising from his willful or negligent breach of duty in these matters. The position finds support in *Hair v. Downing,* one of the North Carolina cases heretofore cited, and is very generally approved in the decisions and text writers on the subject. *Bellevue v. Daly,* 14 Idaho, 545; *Oney v. West Buena Visto Land Co.,* 104 Va., 580; *Dudgeon v. Bronson,* 159 Ind., 652; 9 R. C. L., 794-795; 14 Cyc., 1209; Jones on Easements, sec. 821. But in such case the owner of the dominant estate is not required to maintain or repair the easement for the benefit of the servient tenement. He may, ordinarily, abandon it altogether, without infraction of any rights of the servient owner. 9 R. C. L., 795, citing *Pomfret v. Ricroft,* 1 Saund., 321, 10 Eng. Rul. Cases, 16, and *Mason v. Shrewsbury, etc., Ry. Co.,* L. R., 6 Q. B., 578, 10 Eng. Rul. Cas., 22, and note, a general principle recognized and applied in this State in *Canal Co. v. Burnett,* 147 N. C., 41. But where, as in this case, a system of drainage has been constructed for the benefit of the two properties and is used and enjoyed by the owners of both, the general rule is, or should be, as held by the court below, that each is required to maintain the portion of the system on his own land, unless the conditions and circumstances presented should make such an obligation so unequal and burdensome on one at the expense of the other that a different method of adjustment would be required. While we have found very little authority bearing on the direct question, the rule suggested will usually make for the right

·of the matter, and seems to be approved in *Winslow v. Furhman,* 25 ·Ohio St., 639. On the record, the evidence offered in support of plaintiff's claim is not set out in detail, but from the general statement we ·conclude that his demand is made to rest—and he so intends it—on the proposition that the defendant is liable to bear the entire burden of keeping these lead ditches open, and he is charged with the full expense ·of maintenance and repairs, not only for the proper use and enjoyment ·of his own easement, but for the benefit also of the servient estate.

We are confirmed in this estimate of plaintiff's case by the statement appearing in the record, that "defendant had offered, in connection with plaintiff and others using the three big drains or lead ditches, to pay his *pro rata* part of cutting out the ditch from end to end," etc., and this, in any event, is all that plaintiff could justly require.

We find no error in the ruling of his Honor, and the judgment for defendant must be affirmed.

No error.