IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-101

Filed: 1 August 2017

Brunswick County, No. 14 CVD 888

TANGLEWOOD PROPERTY OWNERS' ASSOCIATION, INC., Plaintiff,

v.

BRANDON WAYNE ISENHOUR; ROBERT MALLANEY and wife MARY MALLANEY; VICKIE CORBETT; LARRY SPAINHOUR and wife LINDA SPAINHOUR; FRANK W. REGISTER and wife LINDA FAYE REGISTER; HOMER BEST; BRENDA GLENN; BERT ANTHONY MCGEE and wife DARLENE MCGEE, Defendants.

Appeal by Plaintiff from order entered 11 February 2015, judgment entered 7 March 2016, and order entered 23 August 2016 by Judge Pauline Hankins in Brunswick County District Court. Heard in the Court of Appeals 7 June 2017.

*Hodges, Coxe, Potter & Phillips, LLC, by Bradley A. Coxe, for Plaintiff-Appellant.*

*No brief filed for Defendant-Appellees.*

HUNTER, JR., Robert N. Judge.

Tanglewood Property Owners' Association, Inc. ("Plaintiff") appeals an 11 February 2015 order denying Plaintiff's motion for summary judgment and a 7 March 2016 judgment. Plaintiff also appeals a 23 August 2016 order denying Plaintiff's motion for judgment notwithstanding the verdict and to amend judgment.

Tanglewood Prop. Owners' Ass'n, Inc. v. Isenhour

*Opinion of the Court*

On appeal, Plaintiff contends the trial court erred in two respects: (1) finding an easement by necessity, limited to the roads required for ingress and egress, because Frank W. Register and Linda Faye Register ("Defendants") possess easements appurtenant in all "streets, ditches, public areas, ICW[1] water access and boat ramp" pursuant to the Tanglewood West plat; and (2) concluding Defendants' pro rata share for the 2013 maintenance of their easements could not be calculated. Plaintiff further contends the 2013 pro rata share per lot for property owners in Tanglewood West totaled $133 per lot and Defendants, accordingly, are responsible for $266 for their two lots.[2] We reverse and remand.

## I. Factual and Procedural History

On 20 May 2014, Plaintiff filed a declaratory judgment action seeking declaration of parties'[3] rights and obligations over "the streets, ditches, public areas, ICW water access and boat ramp" located in Tanglewood "pursuant to the plats recorded with the Brunswick County Register of Deeds" and costs attendant thereto.

---

[1] ICW stands for intracoastal waterway.

[2] On appeal, Plaintiff amends its original calculations; thus, the $133 pro rata share per lot differs from that alleged in the complaint.

[3] Plaintiff subsequently reached a settlement agreement with Defendants Isenhour, Mallaney, Glenn, and McGee. The trial court entered default judgments against Defendants Spainhour and Best. On 2 November 2015, Judge Thomas Aldridge granted summary judgment in favor of Defendant Corbett, determining as a matter of law, Tanglewood North property owners take pursuant to the Tanglewood North plat *only* and do not possess any easement over "roads, ditch[es], common area[s], boat ramp or ICW access in the subdivisions known as Tanglewood East, Tanglewood West or Windy Point Park" and, therefore, possess no maintenance duty because the Tanglewood North plat does not depict these areas. Thus, Defendants Register are the only parties to this appeal.

The complaint alleges the cost of maintaining all easements in Tanglewood for 2013 totaled $83,269[4] and each property owner's pro rata share per lot, based upon 652[5] non-developer lots, totaled $128.[6] In sum, Plaintiff alleged Defendant was liable for $281, which represented their pro rata share, plus a $25 late fee. Plaintiff sought injunctive relief until such time Defendants remitted $281.[7]

On 28 July 2014, Defendants filed an answer, admitting "owner[ship] of the dominant estate over the streets, ditches, public areas, ICW water access and boat ramp" pursuant to the Tanglewood West plat and by prescription. However, Defendants denied any duty to maintain the easements. Defendants pointed to Plaintiff's alleged noncompliance with the North Carolina Planned Community Act. Defendants additionally stated that Plaintiff and other property owners "have not been provided a fair portion for maintenance, upkeep and operation[,]" and further

---

[4] The $83,269 figure, initially submitted by Plaintiff, reflected the total cost of maintenance for roads and common areas in Tanglewood East, Tanglewood West, and Windy Point Park. This figure does not encompass any cost of maintenance associated with Tanglewood North.

[5] The 652 lots included all non-developer lots in Tanglewood East, Tanglewood North, Tanglewood West, and Windy Point Park. Windy Point Park is a separate subdivision, that borders the Tanglewood subdivision. Windy Point Park property owners possess an express easement over Tanglewood West's private roads to gain access to the boat ramp and parking area located in Tanglewood West. In accordance with this agreement, Windy Point Park lots are included in the total number of lots.

[6] The $128 pro rata share per lot was calculated by dividing $83,269 by 652.

[7] Plaintiff additionally submitted the following arguments in the alternative: (1) Defendants possess an easement by prescription; (2) Defendants do not possess any easement in the identified areas; (3) breach of contract implied by law; and (4) breach of contract implied in fact.

alleged, "[m]embers have more benefits and pay less than this lawsuit is requiring of the Defendants."[8]

On 24 September 2014, Plaintiff moved for summary judgment against Defendants.[9] The trial court held a hearing for the motion for summary judgment on 1 December 2014.

Plaintiff asserted the following arguments: (1) when property is conveyed by deed, referencing a plat depicting common areas, an easement over the common areas is held by the purchaser; 2) in accordance with the acquired easement rights, the easement holder possesses a duty to maintain their easement, which is irrespective of the easement holder's actual use of the easement; (3) the pro rata share of maintenance is then calculated based upon a per lot basis, with the number of lots determined at the time of conveyance, irrespective of any subsequent lot consolidation; and (4) accordingly, Defendants hold an easement over "the streets, ditches, public areas, intracoastal waterway access, and the boat ramp" pursuant to their deed and possess a duty to maintain their easements based upon ownership of two lots.

---

[8] Membership in the Tanglewood Property Owners' Association ("TPOA") is voluntary. TPOA was established after the lots within Tanglewood were conveyed, and, thus, membership is not compulsory. Members are assessed annual dues, which encompass maintenance costs, and, therefore, members were not assessed an additional pro rata amount for maintenance.

[9] On 23 October 2014, Plaintiff also moved for summary judgment against Defendant Corbett.

Defendants appeared *pro se* and presented the following arguments: (1) with the exception of the roads necessary to gain access to their property, they do not use the easements depicted on the plat; (2) use of some of the alleged easement areas, including the boat ramp and picnic shelter, is restricted to member use; 3) they are willing to contribute to the maintenance of the roads, but as a result of this dispute have been "forced to join an association [they] don't want to be a member of"; (4) members are assessed less and afforded greater benefits within the community, with their dues calculated on a per owner basis and not on a per lot basis; and (5) their two lots were combined into one per the "direction of the Brunswick County Central Permitting[.]"[10]

On 11 February 2015, the trial court denied Plaintiff's motion for summary judgment against Defendants Register and Corbett. The matter proceeded to a bench trial on 16 February 2016.

Plaintiff called one witness, Jeremy Bass, Vice President of TPOA. Bass explained the Tanglewood subdivision encompasses three phases: Tanglewood East, Tanglewood North, and Tanglewood West. TPOA is a voluntary property owners'

---

[10] Defendant Corbett additionally presented arguments. As stated *supra*, Defendant Corbett subsequently moved for summary judgment, which was later granted by Judge Aldridge on 2 November 2015. Thus, Defendant Corbett is not a party to this appeal. However, it is important to note, at the 1 December 2014 summary judgment hearing, Defendant Corbett argued Tanglewood North property owners take subject to the Tanglewood North plat *only*. While Plaintiff initially disputed this contention, arguing Tanglewood property owners had notice of the other phases, on appeal, Plaintiff has modified its stance, incorporating Judge Aldridge's order. Plaintiff now argues, Defendants Register, as owners of property in Tanglewood West, take subject to the Tanglewood West plat *only*.

association, established in 1985 to maintain Tanglewood's common areas and private streets. Following establishment of TPOA, the developer of the Tanglewood subdivision deeded all common areas and private roads to TPOA. While there are some areas within Tanglewood reserved for members only, all property owners may use the boat ramp, parking lot, and private streets.[11]

Tanglewood subdivision encompasses both public roads, maintained by the North Carolina Department of Transportation, and private roads, maintained by TPOA. Although Plaintiff compiled a list of Tanglewood's roads, some roads, including Lake Peggy Circle, the road Defendant resides on, appears to be missing from the list. Despite this, Lake Peggy Circle is depicted on the Tanglewood West plat.[12]

From 1985 until 2013, Plaintiff paid for the maintenance of all common areas and private streets, and non-members were not required to contribute to maintenance of these areas. However in 2013, the board of TPOA consulted with an attorney to determine "if there was a way to have non-members pay for their fair share[.]" The board acquired a breakdown of the estimated cost of maintaining all common areas and private streets within Tanglewood East, Tanglewood West, and Windy Point Park. The estimated cost of maintaining the easement areas, excluding any areas

---

[11] Only the gazebo and pond are restricted to members only.
[12] On the plat, Lake Peggy Circle is listed as "Peggy Drive."

restricted to member use only, totaled $83,269. The board ascertained the total number of nondeveloper lots, 652, in Tanglewood East, Tanglewood North, Tanglewood West, and Windy Point Park from the original plats, irrespective of any subsequent purchases that may have resulted in lots being combined. Additionally, although members of TPOA were not assessed an additional maintenance fee because their membership dues encompass maintenance costs, the total number of lots included both member and non-member lots. The maintenance cost per lot was then calculated by dividing the total cost of maintenance by the total number of non-developer lots, equaling approximately $128 per lot.[13]

Plaintiff sent a demand letter to all non-member property owners, including Defendant, on or about 31 December 2013, seeking pro rata contribution of $128 per lot owned. Plaintiff assessed Defendants $256 pursuant to their ownership of lots 298 and 299 in Tanglewood West; however, Defendants failed to remit payment. A second letter requesting payment went unanswered.

---

[13] During trial, Bass additionally estimated the pro rata cost of maintenance specific to Tanglewood West, to be $134 per lot. This was calculated by subtracting the cost of maintenance of Windy Point Park ($696) and the cost of maintenance of Tanglewood East ($27,524.33 (one third of $82,573)) from the total cost of maintenance ($83,269). This resulting figure (the transcript states two figures, $54,498 and $54,958) was then divided by the total number of lots in Tanglewood West and Windy Point Park (410). As stated *supra*, on appeal, Plaintiff utilizes this approach, estimating the cost of maintenance to be $133 per lot. Despite Plaintiff's revised approach, Plaintiff's calculations contain mathematical errors. Assuming Plaintiff's submitted estimates for the cost of maintenance are correct, our calculations indicate the pro rata share should be $134.27. This is calculated by taking $83,269 (total cost of maintenance) and subtracting $696 (cost of maintenance of Windy Point Park) to get $82,573. Then, $27,524.33 (cost of maintenance of Tanglewood East–assuming Plaintiff's assertion that Tanglewood East represents 1/3 of the total cost of maintenance of Tanglewood East and West) is subtracted to get $55,048.67. This is then divided by 410 (number of lots in Tanglewood West and Windy Point Park) to get $134.27.

Following Bass's testimony, Plaintiff moved for a directed verdict. Plaintiff argued Defendants possessed an easement pursuant to the Tanglewood West plat and, accordingly, possess a duty to maintain their easement. Plaintiff further contended, if the trial court determined Defendant possessed an easement over Tanglewood East, Tanglewood West, and Windy Point Park, Defendant's pro rata share of maintenance costs would be $148 per lot. Alternatively, if the trial court construed an easement only over Tanglewood West and Windy Point Park, Defendant's pro rata share would be $134 per lot.[14] The trial court denied Plaintiff's motion for directed verdict.

Mr. Register testified for the defense, and largely narrated his testimony. He and Mrs. Register have resided in the Tanglewood subdivision for approximately twenty years. They elected to be members of TPOA for approximately ten years[15]; however, they since withdrew from membership. They did not enter into any agreement regarding any easements or associated duty of maintenance. However, their deed does reference the Tanglewood West plat, which depicts the boat ramp, parking lot, and Lake Peggy Circle. Although they possess easements "over streets,

---

[14] Plaintiff's alternative argument presented at trial provides conflicting information. Plaintiff refers to the alternative approach as encompassing an easement over Tanglewood West *and* Windy Point Park. However, the $134 per lot was the pro rata share specific to maintenance of Tanglewood West only.

[15] The record does not establish when exactly Defendants were members, whether it was upon purchase or if they later became members

ditches, public areas, intracoastal water access and a boat ramp that are owned by the plaintiff, Tanglewood", he disputed their duty to maintain these areas.

Defendants received Plaintiff's first demand letter, which "said it was for road usage." The letter did not mention easements, and Defendants refused to pay because they were "entitled to the right of way to [their] property." Defendants then received a second demand letter from Plaintiff's attorney, specifically asserting Defendants possessed easements in common areas and the roads in Tanglewood. However, Defendants did not have access to these areas. Defendants maintained their property, and Plaintiff has not provided any maintenance over their property. He believed Plaintiff's actions are "criminal" and he "cannot understand how [Plaintiff] can just come . . . take money . . . for something that [they have] not agreed to or even had any say-so in."

On 7 March 2016, the trial court entered judgment and concluded the following: (1) Defendants do not possess any easement "in the private streets, ditches, boat ramp, ICW water access and parking lots in Tanglewood West" pursuant to their general warranty deed or the Tanglewood West plat; (2) Defendants possess an easement by necessity over Lake Peggy Circle and West Tanglewood Drive SW to gain access to their property; (3) Defendants possess "a duty to provide their reasonable pro rata share" for the maintenance of their easement over Lake Peggy Circle and West Tanglewood Drive SW; (4) Defendants do not possess any easement

over "any other private street, ditch, boat ramp, ICW water access, parking lot, pier, gazebo, or any other common area including those shown on the plats of Tanglewood West, Tanglewood East, and Windy Point Park" and are, therefore, not liable for maintenance of those areas; (5) based on the evidence presented, Defendants' pro rata share for the 2013 maintenance of their easements cannot be determined and Defendants are, therefore, not liable to Plaintiff for the 2013 maintenance of their easement; and (6) Defendants, or their successors in title, shall pay for their "annual, reasonable pro rata share of the maintenance costs," which shall be calculated based upon the two lots initially conveyed to Defendants, for 2014 and "until such time as Lake Peggy Circle and/or West Tanglewood Dr. SW is owned and maintained by the North Carolina Department of Transportation as a public road."

On 16 March 2016, Plaintiff filed a motion for judgment notwithstanding the verdict. On 31 March 2016, Plaintiff filed a joint motion—an amended motion for judgment notwithstanding the verdict and a motion to amend the judgment. On 23 August 2016, the trial court denied Plaintiff's motions for judgment notwithstanding the verdict and to amend the judgment. Plaintiff timely filed notice of appeal on 1 September 2016.

## II. Standard of Review

The issue of denial of summary judgment is reviewed *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). "[S]uch judgment is appropriate

only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Id.* at 573, 669 S.E.2d at 576 (quoting *Forbis v. Neal,* 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

## III. Analysis

### A. Summary Judgment

On appeal, Plaintiff contends the trial court erred in denying summary judgment. Specifically, Plaintiff argues Defendants possess easements "in the streets, ditches, public areas, ICW water access and boat ramp" and, accordingly, as holders of the easements, possess a duty to maintain their easements. We agree.

"An easement is a right to make some use of land owned by another . . . ." *Builders Supplies Co. of Goldsboro, N.C. v. Gainey,* 282 N.C. 261, 266, 192 S.E.2d 449, 453 (1972) (citing *Richfield Oil Co. v. Hercules Gasoline Co.,* 112 Cal. App. 431, 297 P. 73; James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* §§ 270, 309; 25 Am. Jur. 2d *Easements* §§ 2, 4; 28 C.J.S., *Easements,* Black's Law Dictionary). An easement is either appurtenant or in gross. *Davis v. Robinson,* 189 N.C. 589, 598, 127 S.E. 697, 702 (1925). "An appurtenant easement is an easement created for the purpose of benefiting particular land. This easement attaches to, passes with and is an incident of ownership of the particular land." *Shear v. Stevens Bldg. Co.,* 107 N.C. App. 154, 161, 418 S.E.2d 841, 846 (1992) (citing *Gibbs v. Wright,* 17 N.C. App. 495,

195 S.E.2d 40 (1973)). By contrast, "[a]n easement in gross is not appurtenant to any estate in land and does not belong to any person by virtue of his ownership of an estate in other land, but is a mere personal interest in or right to use the land of another; it is purely personal and usually ends with the death of the grantee." *Shingleton v. State*, 260 N.C. 451, 454, 133 S.E.2d 183, 185 (1963) (citing *Davis*, 189 N.C. at 598, 127 S.E. at 697).

An easement can be created in several ways, including grant, estoppel, way of necessity, implication, dedication, prescription, reservation, and condemnation. *Davis*, 189 N.C. at 598, 127 S.E. at 702 (citation omitted). "Although easements must generally be created in writing, courts will find the existence of an easement by implication under certain circumstances." *Knott v. Wash. Hous. Auth.*, 70 N.C. App. 95, 97, 318 S.E.2d 861, 862-63 (1984) (citing James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 280 at 346 (1971)). Appurtenant easements implied by plat are recognized in North Carolina. *See Hinson v. Smith*, 89 N.C. App. 127, 131, 365 S.E.2d 166, 168 (1988) (holding property owners possess "a private easement over and across all of the property designated as 'Beach' on the recorded plat"). The easement areas must be sufficiently identified on the plat in order to establish an easement, although an express grant is not required. *See Conrad v. West-End Hotel & Land Co.*, 126 N.C. 776, 779-80, 36 S.E. 282, 283 (1900) (holding purchasers' deed reference to plat containing area identified "Grace Court" sufficient to establish

purchasers' right to "open space of land"); *Harry v. Crescent Res., Inc.*, 136 N.C. App. 71, 75, 80, 523 S.E.2d 118, 121, 123-24 (1999) (determining remnant parcels depicted on plat and "described by metes and bounds" but not further identified insufficient to establish an easement); *Hinson*, 89 N.C. App. at 130-31, 365 S.E.2d at 167-68 (finding area designated "Beach" on recorded plat referenced by property owners' deeds sufficient to establish a private easement).

We are further guided by our Supreme Court in *Cleveland Realty Co. v. Hobbs*, 261 N.C. 414, 135 S.E.2d 30 (1964):

> Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement. It is said that such streets, parks and playgrounds are dedicated to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. It is a right in the nature of an easement appurtenant. Whether it be called an easement or a dedication, the right of the lot owners to the use of the streets, parks and playgrounds may not be extinguished, altered or diminished except by agreement or estoppel. This is true because the existence of the right was an inducement to and a part of the consideration for the purchase of the lots. Thus, a street, park or playground may not be reduced in size or put to any use which conflicts with the purpose for which it was dedicated.

*Id.* at 421, 135 S.E.2d at 35-36 (citations omitted).

- 13 -

The general rule governing easement maintenance is: "in the absence of contract stipulation or prescriptive right to the contrary, the owner of an easement is liable for the costs of maintenance and repairs where it exists and is used and enjoyed for the benefit of the dominant estate alone . . . ." *Lamb v. Lamb*, 177 N.C. 150, 152, 98 S.E. 307, 309 (1919). "[T]he owner of the servient tenement is under no duty to maintain or repair it, in the absence of an agreement therefor." *Green v. Duke Power Co.*, 305 N.C. 603, 611, 290 S.E.2d 593, 598 (1982) (citations omitted). This duty of maintenance exists in the context of implied easements, specifically easements implied by plat. *Shear*, 107 N.C. App. at 161, 165, 418 S.E.2d at 846, 848 (holding lot owners possessed an easement appurtenant "to the lake and surrounding undeveloped land" pursuant to their plat and, accordingly, had "the sole responsibility of bearing the cost of maintaining their easement"). Furthermore, an easement holder's share of maintenance may be calculated on a pro rata, per lot basis.[16] *Lake Toxaway Cmty. Ass'n v. RYF Enters.*, 226 N.C. App. 483, 491-92, 742 S.E.2d 555, 561-62 (2013) (upholding pro rata maintenance amount assessed to a property owner, even though the property owner did not use *all* easements in question and rejecting the property owner's contention that maintenance duty

---

[16] In *Sanchez v. Cobblestone Homeowners Ass'n*, ___ N.C. App. ___, ___, 791 S.E.2d 238 (2016), this Court held *access* to benefits alone was insufficient to meet the requirements set forth in *Lake Toxaway*. *Id.* at ___, 791 S.E.2d at 246. However, *Sanchez* applied *Lake Toxaway* solely in the context of an implied contract.

"extend[ed] only to those amenities used by [property owner] in an amount proportional to its use of those amenities").

In *Shear*, defendant developer sought to drain a lake located within the community and develop the surrounding area. 107 N.C. App. at 159, 418 S.E.2d at 844. In response, plaintiff property owners argued they possessed implied easements, pointing to their deeds that referenced a recorded plat "depict[ing] streets, the lake and undeveloped areas surrounding the lake . . . includ[ing] a playground." *Id.* at 156, 418 S.E.2d at 843. Plaintiffs additionally relied on defendant's representations regarding the lake, specifically "they were informed that the lake was for the use and enjoyment of the residents of Cardinal Hills." *Id.* at 157, 418 S.E.2d at 843. While this Court noted the "oral representations and actions" further evidenced the defendant's intent, this Court held, "[t]he contents of this map, and the [defendant's] selling and conveying in reference to this map, *alone* creates an easement to the lake and the surrounding property." *Id.* at 163, 418 S.E.2d at 846 (emphasis added). Additionally, finding "[n]o agreement or intent to the contrary," in accordance with the general rule of easement maintenance, this Court found, "the cost of maintaining the lake and the surrounding undeveloped land should be paid by the [easement holders]." *Id.* at 165, 418 S.E.2d at 848.

At the outset, we note Defendants admitted in their Answer and at trial possession of easements "over the streets, ditches, public areas, ICW water access

and boat ramp . . . ."[17]  Additionally, there is no dispute over whether the Tanglewood West plat "sufficiently identified" the easement areas in question. *See Conrad*, 126 N.C. at 779-80, 36 S.E. at 283; *Harry*, 136 N.C. App. at 80, 523 S.E.2d at 123-24; *Hinson*, 89 N.C. App. at 131, 365 S.E.2d at 168. The Tanglewood West plat depicts the lots, streets, and common areas located within the boundaries of the Tanglewood West phase of the subdivision.[18]   The characterization of the easements as appurtenant is also not in contention, and it is clear the rights in question benefit a specific parcel of property and are "an incident of ownership," *Shear*, 107 N.C. App. at 161, 418 S.E.2d at 846 (citation omitted), and are not personal rights. *Shingleton*, 260 N.C. at 454, 133 S.E.2d at 185 (citation omitted).  Therefore, in accordance with the Defendants' deed reference to the Tanglewood West plat, Defendants possess an easement appurtenant over these areas located in Tanglewood West.

Next, we examine Defendants' duty of maintenance.  To begin, we observe the language in *Lamb*, specifically the inclusion of "and is *used and enjoyed*[.]"  177 N.C. at 152, 98 S.E. at 309 (emphasis added).  We believe Plaintiff's assertion, specifically that an easement holder's duty of maintenance exists *completely irrespective* of use,

---

[17] While parties are bound by their pleadings, we note Defendants' admission is a conclusion of law. *Universal C.I.T. Credit Corp. v. Saunders*, 235 N.C. 369, 372, 70 S.E.2d 176, 178 (1952) ("[I]n searching the pleadings to determine the *material facts* which are controverted and those which are taken as true, the rule is that each party is bound by his pleading, and unless withdrawn, amended, or otherwise altered, the allegations contained in a pleading ordinarily are conclusive as against the pleader.") (emphasis added) (citations omitted).

[18] In contrast, the Tanglewood East and Tanglewood North plats depict the areas encompassed within the boundaries of their respective phases, which does not include these common areas.

mischaracterizes *Lake Toxaway*. *Lake Toxaway's* discussion of an easement holder's duty of maintenance cites to *Lamb*. *Lake Toxaway Cmty. Ass'n*, 226 N.C. App. at 492, 742 S.E.2d at 562. *Lamb's* inclusion of "and is *used and enjoyed*" would be rendered meaningless if an easement holder's duty of maintenance exists completely irrespective of use. 177 N.C. at 152, 98 S.E. at 309 (emphasis added). While the Defendants contend they do not use any of the easement areas in question, with the exception of the roads necessary for ingress and egress, we note, similar to *Lake Toxaway*, a portion of Defendants' easement is, indeed, used. Furthermore, although the Defendants may not currently use *some* of the easement areas, as easements appurtenant, Defendants' rights to these areas will run with the land and add value to Defendants' property. *Shear*, 107 N.C. App. at 161, 418 S.E.2d at 846 (citation omitted). Thus, Defendants are conferred a benefit, even if they do not currently use *all* of the easement areas. In accordance with this Court's precedent, we hold Defendants, as property owners in Tanglewood West, possess a duty to maintain their easements located in Tanglewood West.[19]

---

[19] We note the well-established rule governing enforcement of restrictive covenants imposing affirmative obligations on property owners. *See Allen v. Sea Gate Ass'n, Inc.*, 119 N.C. App. 761, 764, 460, S.E.2d 197, 199 (1995) (citing *Beech Mountain Prop. Ass'n, Inc. v. Seifart*, 48 N.C. App. 286, 295, 269 S.E.2d 178, 183 (1980)) ("Covenants that impose affirmative obligations on property owners are strictly construed and unenforceable unless the obligations are imposed 'in clear and unambiguous language' that is 'sufficiently definite' to assist courts in its application."). However, *Allen* dealt with restrictive covenants and is thus distinguished from the present case, which is in the context of easements. As previously noted, we are bound by our precedent pertaining to an easement holder's duty of maintenance.

As stated *supra* in footnote 13, Plaintiff's revised calculations contain mathematical errors. Pursuant to our review of the record, Tanglewood West property owners' pro rata share for easements located in Tanglewood West is calculated by ascertaining the total cost of maintenance, specific to the easement areas located in Tanglewood West, and dividing that figure by the total number of lots in Tanglewood West and Windy Point Park.

As easements appurtenant, the rights and duties associated with the easement areas "attach[ ] to, pass[ ] with and [are] an incident of ownership of the particular land." *Shear*, 107 N.C. App. at 161, 418 S.E.2d at 846 (citation omitted). As noted *supra* in footnote 6, pursuant to an agreement between Plaintiff and the developer, lots retained by the developer were not assessed additional maintenance costs and were, therefore, excluded from the total number of lots used to calculate the pro rata maintenance costs. While this issue was not raised on appeal, it would seem this agreement does not alter the easement rights and duties imposed on the lots owned

---

We further note, over twenty years has elapsed during which Plaintiff assumed responsibility for maintaining the easement areas and did not enforce Defendants' duty of maintenance. One might speculate whether such conduct constituted wavier. *See Medearis v. Tr. of Meyers Park Baptist Church*, 148 N.C. App. 1, 12, 558 S.E.2d 199, 206-07 (2001) ("A waiver is implied when a person dispenses with a right 'by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right.'") (quoting *Guerry v. Am. Tr. Co.*, 234 N.C. 644, 648, 68 S.E.2d 272, 275 (1951)). Since this issue was not raised at trial or on appeal, it is unclear whether Defendants, pursuant to the plat, inquired what maintenance duties they would be charged with prior to acquiring their property. Conceivably, they would have been informed that this duty had been assumed by Plaintiff. However, the issue of waiver was not presented to this Court, and, thus, we do not address it. *See* N.C. R. App. P. 28(a) (2016) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").

by the developer. Thus, while Plaintiff was free to enter into this agreement with the developer, developer lots should not be excluded from the total number of lots (just as the member lots were not excluded from the total number).

Furthermore, Defendants possess easement rights and duties for each lot owned. *See Claremont Prop. Owners Ass'n v. Gilboy*, 142 N.C. App. 282, 287, 542 S.E.2d 324, 327-28 (2001) (holding a real covenant that "run[s] with the land" and imposes an affirmative obligation to contribute to road maintenance attaches to both lots owned individually, and consolidation of lots into one lot "did not alter or negate the real covenants that had previously attached to each lot"). While *Claremont* was in the context of a *real covenant* that attached to the land and not an *appurtenant easement*, the reasoning applies equally in this context, as both attach to or "run with the land."

In conclusion, the depiction of the streets, ditches, public areas, ICW water access, and boat ramp on the Tanglewood West plat is undisputed, and Plaintiff is entitled to judgment as a matter of law. As such, the trial court erred in denying Plaintiff's motion for summary judgment. We, therefore, remand to the trial court to calculate the amount owed by the landowners, in accordance with our opinion.

**B. Judgment and Amended Judgment**

Plaintiff finally contends the trial court erred by granting judgment in favor of Defendants and denying its untimely amended motion for amended judgment.

Because we hold the trial court erred in denying summary judgment, we need not address these issues on appeal.[20]

## IV. Conclusion

For the foregoing reasons we reverse and remand to the trial court to enter an order consistent with this opinion and declare the amount of maintenance costs owed by Defendants to Plaintiff. To achieve this result, the trial court may, if it deems necessary, take additional evidence.

REVERSED AND REMANDED.

Judges DAVIS and MURPHY concur.

---

[20] We note the trial court properly denied Plaintiff's joint amended motion for judgment notwithstanding the verdict and motion to amend judgment. Pursuant to Rule 59(e), "[a] motion to alter or amend the judgment under section (a) of this rule shall be served not later than 10 days after entry of the judgment." N.C. R. Civ. P. 59(e) (2016). Here, the trial court entered judgment on 7 March 2016. Plaintiff failed to comply with the time constraints pursuant to its amended motion for judgment notwithstanding the verdict and motion for amended judgment, filed 23 days after entry of judgment, on 31 March 2016.

We additionally note, while Plaintiff's notice of appeal references the denial of its motion for judgment notwithstanding the verdict, this issue is not presented in Plaintiff's brief. Once again, pursuant to Rule 28, "[t]he scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned." N.C. R. App. P. 28(a).

Furthermore, the trial court properly denied Plaintiff's motions for directed verdict and judgment notwithstanding the verdict as such motions are improper in nonjury trials. *See Whitaker v. Earnhardt*, 289 N.C. 260, 264, 221 S.E.2d 316, 319 (1976) (citation omitted) ("The motion for judgment n.o.v. must be preceded by a motion for a directed verdict which is improper in non-jury trials.").