IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-445

No. COA21-366

Filed 5 July 2022

New Hanover County, No. 19-CVS-1668

CAPE HOMEOWNERS ASSOCIATION, INC., DESMOND P. MCHUGH and wife, GERALDINE MCHUGH, MICHAEL L. BODNAR and wife, PATRICIA L. BODNAR, BRUCE ANDERSON and wife, ARLENE ANDERSON, DONNA J. MARTIN and spouse, PETER MARTIN, Plaintiffs,

v.

SOUTHERN DESTINY, LLC, a North Carolina Limited Liability Company, Defendant.

Appeal by Plaintiffs from orders entered 3 December 2020 and 8 February 2021 by Judge R. Kent Harrell in New Hanover County Superior Court. Heard in the Court of Appeals 15 December 2021.

*Shipman & Wright, L.L.P., by Gary K. Shipman, for Plaintiffs-Appellants.*

*Ward & Smith, P.A., by Ryal W. Tayloe, Christopher S. Edwards, and Luke C. Tompkins, for Defendant-Appellee.*

COLLINS, Judge.

¶ 1    Plaintiffs appeal from orders on cross-motions for summary judgment and Plaintiffs' motion for amended and additional findings of fact. Plaintiffs argue that the trial court erred by entering summary judgment in Defendant's favor based upon its conclusions that Defendant has an express easement permitting it to use the

streets and roads of Plaintiffs' residential subdivision and that Plaintiffs lack an easement implied by plat requiring certain property adjacent to the subdivision to be kept open for their reasonable use. Because the trial court erred by concluding that Defendant has an express easement permitting it to use the streets and roads of Plaintiffs' residential subdivision, we reverse the trial court's entry of summary judgment on that claim. We remand to the trial court to enter summary judgment in Plaintiffs' favor regarding Defendant's claim for an express easement and for further proceedings to address Defendant's alternative claims for an implied easement. We affirm the trial court's entry of summary judgment based on its conclusion that Plaintiffs lacked an easement over the property adjacent to the subdivision.

## I.    Background

This case concerns property rights in the Cape Subdivision, a residential development, and an adjacent property which has historically been used as a golf course ("Subject Property"). Plaintiffs are the Cape Homeowner's Association, Inc. ("Cape HOA"), and owners of individual lots within the Cape Subdivision.[1] The Cape HOA is responsible for maintaining the "common areas, streets, and entrances to and in" the Cape Subdivision.

Defendant Southern Destiny, LLC, is the current owner of the Subject

---

[1] Upon Plaintiffs' motion, the trial court certified a class of individual property owners within the Cape Subdivision.

Property. Defendant ceased operating a golf course on the Subject Property in 2018 and wishes to develop portions of it into residential subdivisions.

¶ 4        In January 1983, Carolina Resorts acquired the Subject Property and the property on which the Cape Subdivision now sits. Carolina Resorts conveyed this property to Suggs & Harrelson, Inc., in November 1983. Between 1983 and 1986, Carolina Resorts and Suggs & Harrelson, Inc., recorded a series of plat maps depicting residential lots in sections of the Cape Subdivision. Several of the maps show portions of roads, the Cape Fear River, areas labeled for "future development" and "future construction," lakes, and areas labeled "the Cape Golf Course" adjacent to the sections of the Cape Subdivision. No single map depicts an entire golf course. Taken together, the maps either label or illustrate the locations of holes 1, 5-15, and 18 of the Cape Golf Course adjacent to the sections of the Cape Subdivision.

¶ 5        In August 1986, The Cape Joint Venture, of which Suggs & Harrelson, Inc. was an owner, deeded the Subject Property to Midway Partners. Simultaneously, Suggs & Harrelson, Inc., conveyed two tracts, with certain exceptions, to Midway Partners. Defendant alleged, and Plaintiffs admitted, that as a result of these conveyances Midway Partners owned the unsold lots in the Cape Subdivision, all the roads in the subdivision, and the Subject Property.

¶ 6        In September 1986, Midway Partners deeded the Subject Property to Michael and Gwen Mattie (the "Matties"). Midway Partners granted several easements in the

deed, including an easement for

> vehicular, golf cart, and pedestrian use by the Grantee, the Grantee's successors and assigns, the Grantee's employees, Grantee's guests, members of the Grantee's golf club and their guests, and members of the public playing golf at the golf course described above as Tracts 1, 2, 3, 4, and 5, The Cape Golf Course, over and across all streets and roads in the Cape Subdivision, whether dedicated to public use or reserved for private use, as shown on present or future recorded maps of sections of the Cape Subdivision, including but not limited to the recorded maps to which reference is made in the foregoing descriptions of Tracts 1, 2, 3, 4, and 5, The Cape Golf Course, and including all maps of future subdivision sections and future phases of development of The Cape, whether named as such or otherwise, provided that this easement is limited to present and future streets and roads lying within the boundaries of that parcel or parcels, tract or tracts of land described in Exhibit I of this conveyance.

(the "Streets and Roads Easement"). The same day, the Matties conveyed the property and accompanying easements to Thomas Wright.

¶ 7     Wright deeded the Subject Property to Defendant approximately 20 years later, in November 2006. Defendant's deed describes the Subject Property as depicted in a 29 November 2006 Boundary Survey of the Cape Golf and Racquet Club. Defendant continued to operate a golf course and country club on the Subject Property, open only to members and the paying public. Defendant ceased operation of the golf course in late 2018, following damage from Hurricane Florence. Since the closure of the course, Defendant has pursued plans to build residential developments

on portions of the Subject Property.

¶ 8 Plaintiffs filed their complaint on 6 May 2019. Plaintiffs sought declaratory judgment on whether (1) Defendant had any right to use the streets of the Cape Subdivision to develop the Subject Property, (2) the Cape HOA had any right to prohibit Defendant from using the streets of the Cape Subdivision to develop the Subject Property, (3) the individual plaintiffs "acquired a right to have the [Subject Property] or any portion thereof kept open for their reasonable use," (4) the individual plaintiffs acquired an easement appurtenant in the Subject Property, (5) there was a dedication of the Subject Property, (6) Defendant may subdivide and develop the Subject Property for another use, and (7) Defendant may use or connect to the drainage system of the Cape Subdivision. Plaintiffs also brought claims for interference with an easement and nuisance; the Cape HOA alone brought a claim for trespass. Plaintiffs sought injunctive relief. Defendant answered, raised counterclaims, and sought a declaratory judgment that it held an express easement, implied easement by prior use, prescriptive easement, easement by necessity, or easement by estoppel in the roads of the Cape Subdivision.

¶ 9 Plaintiffs and Defendant filed cross-motions for summary judgment. On 3 December 2020, the trial court entered an Order on Cross-Motions for Summary Judgment ("Summary Judgment Order"). The trial court concluded that (1) Plaintiffs had no easement by implication or estoppel over the Subject Property, (2) Defendant

had an "easement appurtenant for vehicular, golf cart and pedestrian use across all streets and roads" in the Cape Subdivision, (3) Defendant "is entitled to make reasonable use of [the Subject Property] even though the flow of surface water is altered thereby," and (4) genuine issues of material fact precluded summary judgment on Plaintiffs' nuisance claim. The trial court concluded that the scope of the Streets and Roads Easement

> includes use by the grantee, the grantees successors and assigns and their guests. The grant is more expansive in that it refers to members of the golf course and members of the public who are playing golf but in the absence of an operational golf course on the property, those expansive provisions would no longer apply. The lack of continued use as a golf course does not, however, nullify the grant of easement to the grantee, its successors and assigns, its employees and its guests.

The trial court certified, pursuant to N.C. Gen. Stat. § 1A-1, Rule 54, that there was no just reason for delay of an appeal from the Summary Judgment Order.

¶ 10    Plaintiffs moved the trial court to amend its findings, make additional findings, and amend its Summary Judgment Order pursuant to N.C. Gen. Stat. § 1A-1, Rule 52. On 8 February 2021, the trial court entered an order denying Plaintiffs' motion for additional findings ("Rule 52 Order"). The trial court explained that it considered the resolution of certain issues implicit in its Summary Judgment Order, but "for the sake of clarity" entered a "supplemental order" expressly stating its ruling on each portion of Plaintiffs' request for declaratory judgment and each of Defendants'

counterclaims.

¶ 11     As to Plaintiffs' request for Declaratory Judgment, the Rule 52 Order stated:

> b.  Having determined in the [Summary Judgment Order] that Defendant has an easement appurtenant for vehicular, golf cart and pedestrian use across all streets and roads in The Cape subdivision, the [Cape] HOA does not have the right to prohibit [Defendant] from using the private streets and roads of The Cape for the subdivision and development of the [Subject Property.]
>
> c.  On the issue of whether [Defendant] has any right to use or connect to the private system of drainage of The Cape, owned and maintained by the [Cape] HOA, there is insufficient evidence of the extent of any private system of drainage within The Cape Subdivision to determine whether any such right exists beyond the natural flow of surface water in swells and ditches.  The [Summary Judgment Order] addresses that issue and the Court will make no amendment to or further clarification of that portion of the order.
>
> d.  The lots and units within The Cape were sold in sections by reference to plat maps for each individual section. Those maps did not graphically depict the precise location of the [g]olf [c]ourse [on the Subject Property].  Therefore the Cape Developers did not sell or convey lots/units by reference to a map or plat that represented a division of The Cape into streets and lots and which graphically depicted the precise location of the [g]olf c]ourse [on the Subject Property].
>
> e.  Neither the [Subject Property], nor any portion thereof, were dedicated by the Cape Developers and/or [Defendant] for the use and benefit of purchasers of lots/units within The Cape.
>
> f.  The individual Plaintiffs and other Class Members, as

purchasers of lots/units did not acquire a right to have the [Subject Property] or any portion thereof kept open for their reasonable use.

g. Whether the individual Plaintiffs and other Class Members' rights are subject to revocation except by agreement is moot having determined that no right exists to have the [Subject Property] or any portion thereof kept open for their reasonable use.

h. The individual Plaintiffs and other Class Members did not acquire a right in the nature of an easement appurtenant in and to the [Subject Property] or any portion thereof.

i. Plaintiff seeks a declaratory judgment whether the existence of any such right was an inducement to and part of the consideration for the purchase by the individual Plaintiffs and other Class Members. However, the court has determined that no such right exists. In addition, inducement by the developer is not sufficient standing alone to create an easement by implication. There must be a recorded instrument that exists to clearly demonstrate the intent to encumber and restrict the land which does not exist in this case. . . .

j. The [Subject Property] is not subject to any implied easement on the part of the plaintiffs that would restrict its use therefore the [Subject Property] or any portion thereof may be subdivided, reduced in size and/or put to some use other than a golf course.

k. [Defendant] has the right to subdivide the [Subject Property], or any portion thereof, and develop the same, thereby excluding the individual Plaintiffs and other Class Members[.]

l. There has not been a valid dedication of the [Subject Property.]

¶ 12    As to Defendant's counterclaims, the Rule 52 Order stated:

> a. The existence of an easement appurtenant for vehicular, golf cart and pedestrian use across all streets and roads in the Cape Subdivision, was described and ordered in the [Summary Judgment Order].
>
> b.    The existence of an easement appurtenant for installation and maintenance of utilities is set forth in that certain deed from Midway Partners to Michael and Gwen Mattie . . . .  The Defendant has an easement appurtenant for the installation and maintenance of utilities as set forth in the above described deed.  The issue before the court was the existence of the easement, not its location.
>
> c.  The express granting of an easement negatives the finding of an implied easement of similar character.  . . . Therefore, Defendant's second counterclaim for easement implied by prior use, fifth counterclaim for easement by necessity, and sixth counterclaim for easement by estoppel are all dismissed.
>
> d.    Defendant's third and fourth counterclaims for easement by prescription are dismissed.

¶ 13    Plaintiffs gave notice of appeal from the Summary Judgment Order and Rule 52 Order on 10 March 2021.  The parties subsequently stipulated to the dismissal of Plaintiffs' nuisance claim without prejudice on 19 July 2021.

## II.    Discussion

### A. Streets and Roads Easement

¶ 14    Plaintiffs argue that Defendant does not enjoy an express easement appurtenant over the streets and roads of the Cape Subdivision.  Defendant argues

that its chain of title to the Subject Property establishes that it has such an easement.

¶ 15  Generally, an "easement is a right to make some use of land owned by another." *Tanglewood Prop. Owners' Ass'n v. Isenhour*, 254 N.C. App. 823, 830, 803 S.E.2d 453, 458 (2017) (quotation marks, ellipsis, and citation omitted). "An appurtenant easement is an easement created for the purpose of benefiting particular land . . . [and] attaches to, passes with[,] and is an incident of ownership of the particular land." *Id.* at 830, 803 S.E.2d at 459 (citation omitted). "This distinguishes an easement appurtenant from an easement in gross, which is a personal license to the grantee and does not run with the land itself." *Town of Carrboro v. Slack*, 261 N.C. App. 525, 529, 820 S.E.2d 527, 531 (2018) (citation omitted).

¶ 16  An easement may be created by an express grant. *Tanglewood*, 254 N.C. App. at 830, 803 S.E.2d at 459. No "particular words are necessary for the grant of an easement," but "the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements." *Oliver v. Ernul*, 277 N.C. 591, 597, 178 S.E.2d 393, 396 (1971).

> When an easement is created by deed . . . the description thereof must either be certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers. There must be language in the deed sufficient to serve as a pointer or a guide to the ascertainment of the location of the land.

*Allen v. Duvall*, 311 N.C. 245, 249, 316 S.E.2d 267, 270 (1984) (quotation marks,

ellipsis, emphasis, and citations omitted).

¶ 17 A description of an interest in land is patently ambiguous "[w]hen it is apparent upon the face of the deed, itself, that there is uncertainty as to the land intended to be conveyed and the deed, itself, refers to nothing extrinsic by which such uncertainty can be resolved." *Overton v. Boyce*, 289 N.C. 291, 294, 221 S.E.2d 347, 349 (1976) (citations omitted). "Parol evidence may not be introduced to remove a patent ambiguity since to do so would not be a use of such evidence to fit the description to the land but a use of such evidence to create a description by adding to the words of the instrument." *Id.* (citations omitted).

¶ 18 In this case, Midway deeded the Subject Property and several easements to the Matties. Among those easements was the Streets and Roads Easement, which provided:

> an easement for vehicular, golf cart, and pedestrian use by the Grantee, the Grantee's successors and assigns, the Grantee's employees, Grantee's guests, members of the Grantee's golf club and their guests, and members of the public playing golf at the golf course described above as Tracts 1, 2, 3, 4, and 5, The Cape Golf Course, over and across all streets and roads in the Cape Subdivision, whether dedicated to public use or reserved for private use, as shown on present or future recorded maps of sections of the Cape Subdivision, including but not limited to the recorded maps to which reference is made in the foregoing descriptions of Tracts 1, 2, 3, 4, and 5, The Cape Golf Course, and including all maps of future subdivision sections and future phases of development of The Cape, whether named as such or otherwise, *provided that this*

> *easement is limited to present and future streets and roads*
> *lying within the boundaries of that parcel or parcels, tract*
> *or tracts of land described in Exhibit I of this conveyance.*

(Emphasis added). The Matties deeded the Subject Property and easements to Wright, who later deeded the Subject Property to Defendant. Plaintiffs admitted in their Reply to Defendant's Counterclaim that Wright's deed conveyed the Streets and Roads Easement to Defendant.

¶ 19 Plaintiffs argue that the grant of the Streets and Roads Easement is void because the "Exhibit I" to which it refers is missing from the record. Plaintiffs contend that the absence of Exhibit I is fatal because it leaves the Court unable to determine the scope of the easement.[2] We agree.

¶ 20 The deed expressly limits the Streets and Roads Easement to the "present and future streets and roads lying within the boundaries of that parcel or parcels, tract or tracts of land described in Exhibit I of this conveyance." Exhibit I was made a part of the description of the Streets and Roads Easement, and without it, "there is uncertainty as to the [interest in] land intended to be conveyed and the deed, itself, refers to nothing extrinsic by which such uncertainty can be resolved[.]" *Overton*, 289 N.C. at 294, 221 S.E.2d at 349.

---

[2] Contrary to Defendant's assertion, this argument is preserved for appellate review. Before the trial court, Plaintiffs argued that Defendant had failed to identify the easement with reasonable certainty and raised the absence of Exhibit I.

¶ 21        Defendant does not dispute that there is no Exhibit I attached to the deed but argues that even absent Exhibit I, the deed "is sufficient to point to the location of the easement and the roads of the Cape can be easily identified by reviewing the plats of the sections of the Cape in the public record[s] that Plaintiffs have provided to the Court." Defendant seeks to substitute the known boundaries of the Cape Subdivision for the unknown boundaries described in the missing Exhibit I. Doing so would be impermissible conjecture because no language in the deed demonstrates that the two boundaries are the same. Defendant generally asserts that the text surrounding the easement in the deed confirms that the boundaries are coextensive. However, examination of this text reveals multiple other references to already-recorded plat maps of the Cape Subdivision, suggesting that the boundaries of the land in the missing Exhibit I might have been distinct from the boundaries in the then-recorded maps of the subdivision.

¶ 22        Because the grant of the Streets and Roads Easement "refers to nothing extrinsic by which" the uncertainty about the scope of the easement may be resolved, it is patently ambiguous. *See id.*; *see also Brooks v. Hackney*, 329 N.C. 166, 172, 404 S.E.2d 854, 858 (1991) (holding an agreement that described the boundaries of a parcel of land was patently ambiguous where "[t]he last boundary line [was] subject to a number of constructions, each with significant variations" and the instruments did not "refer to anything extrinsic from which the description can be made more

certain").

¶ 23        Defendant maintains that the absence of Exhibit I is of no consequence because "there is no genuine dispute that [Defendant] and its predecessors in title have always used the roads of the Cape Subdivision" to access the Subject Property since the conveyance of the Streets and Roads Easement. This argument is unavailing because such evidence "may not be introduced to remove a patent ambiguity" such as the one present in the grant of the Streets and Roads Easement. *See Overton*, 289 N.C. at 294, 221 S.E.2d at 349.

¶ 24        Because the grant of the Streets and Roads Easement was patently ambiguous, the trial court erred by granting summary judgment to Defendant concluding that Defendant had an express "easement appurtenant for vehicular, golf cart and pedestrian use across all streets and roads" in the Cape Subdivision. Accordingly, the trial court also erred by concluding that the existence of this express easement appurtenant required the dismissal of Defendant's alternative claims for an easement in the streets and roads of the Cape Subdivision.

**B. Easement Over the Subject Property**

¶ 25        Plaintiffs also argue that they have an "appurtenant easement by plat" over the Subject Property. They contend that this easement confers a right to have the Subject Property "kept open for their 'reasonable' use and enjoyment," and this right "is not subject to revocation without their agreement."

¶ 26        "Appurtenant easements implied by plat are recognized in North Carolina." *Tanglewood*, 254 N.C. App. at 830, 803 S.E.2d at 459 (citation omitted). "Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement." *Cleveland Realty Co. v. Hobbs*, 261 N.C. 414, 421, 135 S.E.2d 30, 35-36 (1964) (citations omitted).

> It is said that such streets, parks and playgrounds are dedicated to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. It is a right in the nature of an easement appurtenant. Whether it be called an easement or a dedication, the right of the lot owners to the use of the streets, parks and playgrounds may not be extinguished, altered or diminished except by agreement or estoppel. This is true because the existence of the right was an inducement to and a part of the consideration for the purchase of the lots. Thus, a street, park or playground may not be reduced in size or put to any use which conflicts with the purpose for which it was dedicated.

*Id.* at 421, 135 S.E.2d at 36 (emphasis and citations omitted).

¶ 27        For an appurtenant easement implied by plat "to be recognized, the plat must show the developer clearly intended to restrict the use of the land at the time of recording for the benefit of all lot owners." *Friends of Crooked Creek, L.L.C. v. C.C.*

*Partners, Inc.*, 254 N.C. App. 384, 392, 802 S.E.2d 908, 914 (2017) (citation omitted). Additionally, "[t]he easement areas must be sufficiently identified on the plat in order to establish an easement, although an express grant is not required." *Tanglewood*, 254 N.C. App. at 830, 803 S.E.2d at 459 (citations omitted). "The free use of property is favored in our State," and "[w]hen there are doubts about the use to which property may be put, those doubts should be resolved in favor of such free use." *Harry v. Crescent Res.*, 136 N.C. App. 71, 80, 523 S.E.2d 118, 124 (1999).

This Court considered whether property owners held appurtenant easements implied by plats in adjacent properties used as golf courses in two recent cases, *Crooked Creek* and *Home Realty Co. & Insurance Agency v. Red Fox Country Club Owners Ass'n*, 274 N.C. App. 258, 852 S.E.2d 413 (2020). In *Crooked Creek*, residential lot owners argued that an appurtenant easement implied by plat required an adjacent property to be "perpetually used only for golf." 254 N.C. App. at 391, 802 S.E.2d at 913. Plat maps recorded by a developer in 1992, 1993, and 1994 showed the residential lots within a subdivision, reserved limited access to the lots from the adjacent golf course, but did not depict the golf course. *Id.* at 385, 802 S.E.2d at 910. In 1995, the developer recorded a survey plat depicting "a dash-lined sketch of an 18-hole golf course, tee boxes, fairways and greens, a driving range, the clubhouse, and other golf features," along with a depiction of "five bold or hard-lined boundary acreage tracts." *Id.* at 386, 802 S.E.2d at 910. This Court held that the lot owners

failed to establish an easement implied by plat for two reasons. First, the lot owners' deeds referenced the 1992-1994 plat maps with no depiction of the golf course, not the 1995 survey plat depicting the golf course. *Id.* at 392-93, 802 S.E.2d at 914. Second, even if the lot owners' deeds had referenced the 1995 survey plat, that document did "not show an intent to restrict the uses of the golf course property" because it contained only a "dotted line location of the golf course greens and fairways[.]" *Id.* at 392, 802 S.E.2d at 914.

¶ 29        More recently, in *Red Fox Country Club*, recorded plats of the subdivision depicted solid lines around residential lots, accompanied by metes and bounds descriptions. 274 N.C. App. at 279, 852 S.E.2d at 427. The plats also depicted golf course holes adjacent to some of the residential lots but did not include metes and bounds descriptions of the outer boundaries of the golf course. *Id.* The boundaries of the golf course were "either not marked at all or [were] depicted with dotted lines." *Id.* We held that the plats were insufficient to create an appurtenant easement implied by plat because they omitted portions of the golf course's boundaries and left the quantity of land undetermined. *Id.*

¶ 30        Here, the lot owners were conveyed their lots by plat maps showing individual sections of the Cape Subdivision. These plat maps also depict portions of adjacent properties, including the Subject Property. But none of the maps depict the entire Subject Property, complete with a metes and bounds description, being used as a golf

course adjacent to the subdivision. Taken together, the maps only label or illustrate the locations of holes 1, 5-15, and 18 of a golf course. Moreover, in multiple instances the maps do not demarcate between areas labeled as a golf course and areas labeled "FUTURE DEVELOPMENT" or "FUTURE CONSTRUCTION." The plat maps Plaintiffs rely upon therefore fail to show that the "developer clearly intended to restrict the use of the land at the time of recording for the benefit of all lot owners." *Crooked Creek*, 254 N.C. App. at 392, 802 S.E.2d at 914 (citation omitted).

¶ 31 Additionally, the plat maps Plaintiffs rely upon are "not capable of describing or reducing an easement in the golf course to a certainty." *Red Fox Country Club*, 274 N.C. App. at 279, 852 S.E.2d at 427. Before the trial court and in their brief, Plaintiffs emphasize that there is now no dispute about the precise boundaries of the Subject Property. But where a party claims an appurtenant easement implied by plat, the relevant plat maps are those that the owners relied upon at the time of purchase. *Cleveland Realty Co.*, 261 N.C. at 421, 135 S.E.2d at 35-36. Again, no single map by which the individual lots were sold shows the entire boundary of the Subject Property, and even taken together, the maps do not show a complete golf course. Moreover, these maps fail to distinguish between areas depicted as golf course and areas labeled for future development or construction.

¶ 32 The trial court therefore did not err in concluding that Plaintiffs had no implied easement by plat in the Subject Property.

### III.    Conclusion

The trial court erred by concluding that Defendant has an express easement appurtenant in the streets and roads of the Cape Subdivision and by dismissing Defendant's alternative claims for implied easements.  We thus reverse the trial court's entry of summary judgment on Defendant's claim of an express easement.  We remand to the trial court to enter summary judgment in Plaintiffs' favor on the express easement claim and to address Defendant's alternative claims for an implied easement by prior use, prescriptive easement, easement by necessity, and easement by estoppel in the roads of the Cape Subdivision.  The trial court did not err by concluding that Plaintiffs lacked an easement implied by plat in the Subject Property and we affirm the trial court's entry of summary judgment in Defendant's favor on that claim.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judges DIETZ and JACKSON concur.